### WHITMIRE v. BOYD.

1. PLEADINGS—AMENDMENTS.—A COMPLAINT in foreclosure of a purchase money mortgage may be so amended after testimony is in as to allege a cause of action for the purchase money of the land alone.

2. ESTOPPEL.—Claim of estoppel not sustained.
3. VENDOR AND VENDEE—REAL PROPERTY—PURCHASE MONEY.—
Under the facts in this case, the vendor of land is not divested of his
right to enforce payment of the purchase money out of the land, on
account of his conveyance of the land to purchaser of the vendee, or
after acquired liens.
4. PURCHASE MONEY—MORTGAGE.—The lien of a vendor of land on it
for purchase money, is not affected by mortgage of vendee to third
party and its record.
5. CONSIDERATION—PLEADINGS.—AN AMENDMENT during trial of an
action in foreclosure so as to allege that the note sued on is without
consideration, is improper but harmless error here, under the facts.

Before ALDRICH, J., Greenville, April, 1898.　　Modified.

Action in foreclosure by Thos. B. Whitmire *v.* H. Y. Boyd,
B. M. McGee, Frank Hammond, W. A. Fowler, J. B. Red-
wine and W. A. Hudson, trustee. The following is so much
of the Circuit decree as is necessary to understand the issues
and his conclusions thereon:

This case comes before this Court upon the pleadings,
order of reference, orders made by the master, the testi-
mony taken by him, his report containing his conclusions
upon the facts and the law, the exceptions of the plaintiff,
and the exceptions of the defendants, H. Y. Boyd, W. A.
Hudson, and B. M. McGee. These exceptions are quite
numerous and long, and, taken together and so far as the
parties excepting are concerned, practically reopen the case.
I will, therefore, consider the case upon its merits, as far as
it is necessary to do so, and my conclusions will dispose of
the exceptions. To understand the issues, it will be nec-
essary to get a correct view of the facts. Plaintiff instituted
this action for the recovery of judgment upon a note, sealed,
and the foreclosure of a mortgage of real estate given to se-
cure the payment of said note. The said note and mort-
gage are forgeries. The land described in said forged
mortgage was, in 1894, the property of the plaintiff. Dur-
ing the year 1894, the plaintiff verbally agreed with A. R.
Fowler, defendant, above named, to sell the land in ques-

tion to him.    On May 22d, 1895, a written contract, under
seal, and witnessed by two witnesses, was executed by
plaintiff and said A. R. Fowler.    This written agreement
is to the effect that A. R. Fowler is "to have the use" of
the land described in complaint, during 1895, and for said
"use" said defendant agreed to pay to plaintiff, "on or before
December 1st, 1895, $150."    This instrument then con-
cludes in these words: "It is further agreed that if the said
A. R. Fowler shall pay to the said T. B. Whitmire, on or
before December 1st, 1895, $500, with interest from Janu-
ary 1st, 1895, at eight per cent. per annum, including the
above $150, and shall execute to the said T. B. Whitmire
a mortgage for $500, payable January 1st, 1898, on said
land, bearing interest from January 1st, 1897, at eight per
cent. per annum, then the said T. B. Whitmire shall ex-
ecute and deliver to the said A. R. Fowler a warrantee
[warranty] deed to said 188 acres of land."    A. R. Fowler
put the defendant, H. Y. Boyd, in possession of the land in
the latter part of December, 1894, and, thereafter, he con-
tinued in possession of the same.    Prior to his moving upon
the place, said Boyd had made a bargain with A. R. Fowler
to purchase the lands from him.    Fowler represented to
Boyd that he was the owner of the land; but Boyd, having
heard that plaintiff was talking of renting the land, went
to see plaintiff whether or not he had sold the land to Fow-
ler.    Plaintiff told him he had sold it to Fowler, and said
nothing about Fowler owing him anything on the sale.
Boyd did not know that A. R. Fowler owed plaintiff the
purchase money of the land until after he had taken a deed
for the land from A. R. Fowler, and executed his note and
mortgage to said Fowler.    Said deed, note, and mortgage
will be considered later on.    After these transactions were
completed, Boyd heard that A. R. Fowler owed plaintiff the
purchase money of the land.    The master states no conclu-
sions upon these issues; but I think that the facts above
stated are material, and that they throw a flood of light
upon this cause, and other issues raised therein.    These

facts or conclusions are fully substantiated by the direct, positive, and unequivocal statements in the testimony of the defendant, Boyd; the statements of plaintiff, when directly questioned in reference to these facts, are uncertain, indefinite, and vague, and do not contradict the statements of Boyd; and the testimony of Boyd is in full accord with the established facts in the cause. On January 22d, 1895, A. R. Fowler, by formal deed of conveyance, duly conveyed the land in question to Boyd. This deed was duly made, executed, and delivered at the time stated. No doubt about that. The consideration therefor was: That Boyd was to take the land subject to an old mortgage for $1,000 held by one McDowell, and to give to Fowler a note for $800, secured by a mortgage of the land. This Boyd did; for on the same day, to wit: January 22d, 1895, he gave to said Fowler his note, which read as follows: "$800. Fountain Inn, January 22d, 1895. On the first day of January, 1898, I promise to pay to the order of A. R. Fowler, $800, with interest at the rate of eight per cent. per annum from date till paid. Interest to be paid and computed annually. For value received, I agree to pay, in case this note is collected by suit, ten per cent. attorney's fees. (Signed) H. Y. Boyd. [L. S.] Attest: W. A. Curry." To secure this note, at the same time and place, Boyd executed and delivered to A. R. Fowler a mortgage of the aforesaid land. The said mortgage is in the usual form, and was duly recorded in the office of the register of mesne conveyance of Greenville County, on February 9th, 1895. While it may not be material, it is proper to note, that the mortgage undertakes to recite the terms and conditions of the note it was given to secure; but in these recitals nothing is said as to the attorney's fee. These transactions were all executed in good faith by Boyd, and he believed that they were honest and efficacious. As against A. R. Fowler, Boyd had a good title to the land. Fowler's deed conveyed all the right, title, and interest he had therein to Boyd. It also conveyed any right, title or interest which Fowler might

acquire in the land.    Plaintiff said, in his testimony, and
it is a fact in the case, that he made the bargain with Fow-
ler, evidenced by their written agreement of May 22d, 1895,
already stated, in 1894, or prior to the execution of the
agreement.    His exact words are: "I did not have any
written contract with Mr. Fowler for the sale till May, 1895.
Prior to that I had agreed to sell to him, and he had made
a partial payment on it."    There is no doubt but that the
contract for sale between plaintiff and Fowler as to the sale
of the land, was made before the conveyance of Fowler to
Boyd, and that the written agreement, evidencing that con-
tract, was not executed until after Boyd's purchase, viz: in
May, 1895.    As against plaintiff, Boyd stood in the shoes
of A. R. Fowler.    By complying with the contract, Boyd
could have forced plaintiff to make the titles to him.    Plain-
tiff could stand upon said contract, and have refused to ex-
ecute a title until that contract was complied with and duly
carried out, either by A. R. Fowler or H. Y. Boyd, as the
assignee of Fowler.    Again, and this is important, plaintiff
and Fowler, or plaintiff and Boyd, or all of them, could, by
consent, change or modify the aforesaid contract, and com-
plete the transactions upon these changed or modified terms.
Did plaintiff and Fowler afterwards change or modify the
terms of the contract, agree thereon, and execute same?
This issue, to be considered further on, is important.

So far in the discussion of this case we have dealt with
real facts.    I regret to say, that criminal conduct, involving
moral turpitude, seems, from this point onward, to enter the
case.    It is proper to say, and I take pleasure in stating, that
A. R. Fowler alone, and no one else, a party to this action
or otherwise, suggested, knew of or connived at the crimes
of said Fowler.    Fowler, it is evident, was as smart and
cunning as he was wicked and depraved.    H. Y. Boyd, who
seems to be an honest and good, but not specially bright
man, was the brother-in-law of A. R. Fowler.    In various
ways he deceived Boyd, and, as we have seen, sold him the
land mentioned.    He took Boyd's note and mortgage, forged

copies of same, or what was intended to be copies, and disposed of these forged papers to honest men, for value. Fowler is now, as was stated in argument, a convict in the Georgia Penitentiary, undergoing sentence for crimes committed in that State. On February 19, 1895, A. R. Fowler placed, as collateral security, in the hands of the defendant, B. M. McGee, the genuine note of Boyd to himself, hereinbefore set forth, and a forged copy of said mortgage. At the time stated, A. R. Fowler borrowed from McGee $400, and, as collateral security, assigned to him the Boyd note and forged mortgage. Mr. McGee knew of the old McDowell mortgage on the land, and refused to lend him the money unless he would get J. D. Harris to sign the note also. A. R. Fowler induced J. D. Harris to sign a note with him, dated February 19, 1895, for $400, payable to Mr. McGee on November 15, 1895, with interest after maturity at the rate of eight per cent. per annum; also for ten per cent. attorney's fees, if the note had to be collected by law. At the foot of said note, and as a part thereof, these words are written, "and place as collateral security note and mortgage given me by H. Y. Boyd for $800 as it appears." This note is signed by A. R. Fowler and J. D. Harris. On the back of the genuine note of H. Y. Boyd to A. R. Fowler, the names, "A. R. Fowler, M. J. Harris, J. D. Harris," are indorsed. Mr. McGee took the notes above stated and the forged mortgage, and let A. R. Fowler have the money. No part of it has been paid. While the aforesaid genuine note was in the possession of Mr. McGee, he allowed A. R. Fowler to write upon the back thereof as follows: "Received on the within note $235, November 6, 1895. A. R. Fowler." Mr. McGee got no part of this money. Mr. McGee did not notify H. Y. Boyd that he held this note and mortgage until "the last of July or the 1st August, 1895." It is evident that Mr. McGee holds the genuine note of H. Y. Boyd, as the assignee of A. R. Fowler. By the assignment of the note he also became the assignee of the legal or genuine mortgage. The rule of law is well established that the as-

signment of the bond carries with it the mortgage; but the assignment of the mortgage does not necessarily carry with it the bond. The bond represents the debt, while the mortgage is a mere security for the payment of such debt. One is the principal, the other is the mere accessory; and while the assignment of the principal carries with it the accessory, the assignment of the accessory does not carry with it the principal. *Cleveland* v. *Cohors*, 10 S. C., 225, and the numerous authorities there cited; also, *re Walker & Trenholm* v. *Kee*, 14 S. C., 142; *Wilson & Co.* v. *Dean*, 21 S. C., 332. There is now due McGee $400, with interest thereon from November 15, 1895, at eight per cent. per annum, and ten per cent. on that amount as attorney's fee, aggregating $526.49. On February 9, 1895, A. R. Fowler signed a paper as follows: "Received of W. A. Hudson, trustee, $50, and assign with him note and mortgage for $800 on H. Y. Boyd, due in 1898, if sold next week, say 16th February, agree to pay out of same $130 to Y. A. Norwood, $100 note and $20 note due said Hudson, and said $50 borrowed to-day. (Signed) A. R. Fowler." At the foot of the above writing, on the same sheet, apparently written by the same person, these words occur: "Received of W. A. Hudson one note and mortgage, $800, given by H. Y. Boyd, which I have assigned to said Hudson as collateral for $180 due him on land papers. (Signed) A. R. Fowler." This last paper is not dated. The alleged note of H. Y. Boyd is not his note; it is a forgery, pure and simple. The forgery attempts to reproduce Boyd's genuine note, and does so very well, except that it is not a literal copy. The mortgage spoken of is the genuine mortgage given by Boyd to A. R. Fowler. Mr. W. A. Hudson testified: "He (Fowler) turned over the mortgage [the genuine mortgage] to me—that is, Fowler gave it to me, and I afterwards let Fowler have it for some purpose; I don't remember what." So Fowler again has the genuine mortgage, and he again disposed of it—for on the back of the mortgage is written: "I hereby transfer the within mortgage to D. H. Livermore as collateral security

21—53

for one note for $250, dated April 6, 1895.   A. R. Fowler."
It will be noted that the assignment here is of the "within
mortgage," and does not purport to assign any debt which
it was given to secure.   It is simply an assignment of the
mortgage.   Another assignment of said mortgage is written
upon the back thereof, and is as follows: "This mortgage
having been transferred to me  by above transfer, and later
by a transfer in a note for $1,000, dated April 2, 1895, I
hereby transfer and assign this mortgage to J. B. Redwine
without recourse on me.   August 13, 1895.   D. H. Liver-
more."   Glued to the mortgage is the following paper:
"Office of J. B. Redwine, Atlanta, Ga., October 5, 1895.   I
do hereby transfer and assign to J. B. Redwine a certain
mortgage, made by and given by H. Y. Boyd to me, and
dated January 23, 1895, and recorded February 9, 1895, in
book K K, page 157, of the Greenville County, S. C., rec-
ords.   This mortgage is for $800, and is transferred now, as
above, for the purpose of securing a $1,000 note, made and
given by me to said Redwine, for value received.   This note
is dated October 2, 1895, and due in six months, and this
transfer is made to secure any future renewal of said note,
in whole or any part thereof.   (Signed) A. R. Fowler."

Note, again, that in none of these transfers is there any
attempt to transfer the note the mortgage was given to
secure, and yet that very mortgage, in express terms, is
given to secure that one debt.   These transfers seem to
negative the idea of the transfer of the debt.   A. R. Fowler
was a sharp man; perhaps he had an idea that he could sell
the note and mortgage, or assign them separately, and thus
realize more from them, and was trying to work some such
plan.   At all events, we have a mortgage, securing in terms
one debt, being assigned to secure another debt.   Mr. Hud-
son can take nothing on his assignment, for he gave the
mortgage back to Fowler.   Redwine can take nothing under
the assignment to him, because he only took an assignment
of the mortgage, while Mr. McGee was the assignee of the
note it was given to secure, and, as assignee, was, and is,

the legal holder of said mortgage. His right or title is derived from two sources: 1st. A. R. Fowler assigned the mortgage to him at the time he assigned the genuine note to him. 2d. Even if Fowler had not, by express contract, so assigned said mortgage, still the assignment of the note, as we have seen, carried the genuine mortgage with it. The same authorities, already cited, hold that the assignment of the mortgage does not carry with it the note, bond or debt it was given to secure. On November 16th, 1895, the plaintiff, T. B. Whitmire, by this deed, under seal, duly conveyed the land in dispute to the defendant, H. Y. Boyd. The consideration is stated to be $2,000. Plaintiff duly executed and conveyed this deed to Boyd. This consideration, according to plaintiff's view, was made up as follows: $1,000 to go to the old McDowell mortgage. He had been paid $235 by A. R. Fowler on November 16th, 1895. H. Y. Boyd furnished that cash, and Fowler gave him credit for it, and indorsed it as a payment upon the genuine note of Boyd to himself, for $800, dated January 22d, 1895, while in the hands of Mr. McGee. There is no doubt that Boyd paid this money to Fowler upon his note, and that Fowler paid it to plaintiff. On November 16th, 1895, W. P. Fowler, a brother of A. R. Fowler, and H. Y. Boyd gave their joint sealed note, secured by a chattel mortgage, to plaintiff for $100. This was duly paid. It was taken by plaintiff in payment in part by A. R. Fowler of the purchase money of the land described in the complaint. It will be remembered that under the agreement for the sale of the land between plaintiff and Fowler, that Fowler was to pay plaintiff $500 on or before December 1st, 1895, with interest from January 1st, 1895, at eight per cent. per annum. So that, on November 16th, 1895, plaintiff had received upon his said contract, either in cash or by note and mortgage accepted as cash, $365, raised by Boyd. Fowler had also paid plaintiff $200 on the contract. Plaintiff and A. R. Fowler changed or modified their original contract; for, after receiving these payments, plaintiff on the same day gave a deed for the

premises direct to H. Y. Boyd, and took from A. R. Fowler, as the consummation of the transaction, a sealed note and a mortgage of H. Y. Boyd to A. R. Fowler. This so-called note is an out and out forgery, and is as follows: "Greenville, S. C., November 16th, 1895. On or before January 1st, 1898, I promise to pay to the order of A. R. Fowler, $800, with interest from date at the rate of eight per cent. per annum till paid in full, interest to be computed and payable annually. I agree to pay ten per cent. attorney's fee in case this note is placed in the hands of an attorney for collection; and should default be made in the payment of interest, the whole $800 shall become due and payable. Witness my hand and seal, the 16th day of November, 1895. (Signed) H. Y. Boyd." The mortgage given to secure this forged note is in the usual form, covers the land described in the complaint, and purports to have been executed by H. Y. Boyd on November 16th, 1895. It is a forgery also. This forged note and mortgage, as appears upon the back of the mortgage, was, on November 16th, 1895, the date of their purported execution, assigned and transferred by A. R. Fowler to the plaintiff, as and for payment of the balance due on the purchase of said land. Plaintiff accepted them as such payment. * * * I think, and so hold, that H. Y. Boyd acted as follows: He in good faith took his deed of the land from A. R. Fowler, and gave his $800 note and mortgage to A. R. Fowler. He then honestly believed that he owned the land, subject to the McDowell mortgage and the Fowler mortgage. Months afterwards he found out that his title was not perfect, and that plaintiff still held the legal title. He went to see plaintiff about it, and plaintiff told him substantially the status of the agreement between himself and Fowler. At that time Boyd contemplated complying with the agreement between plaintiff and A. R. Fowler—even asked plaintiff could he complete it. While there is no direct evidence as to what, if anything, passed between Boyd and A. R. Fowler, it is reasonable to assume, and incidental statements made by witnesses sup-

port the assumption, that Boyd talked with A. R. Fowler about the matter. It is only natural that he should have done so. It is evident that A. R. Fowler saw and talked with plaintiff in reference to the matter. Plaintiff and Fowler, without the knowledge, much less the consent, of Boyd, changed the agreement. Plaintiff's own testimony and his acts and those of Fowler show this. I cannot say what passed between plaintiff and A. R. Fowler, but I know what they did as a consequence of what passed between them. The written agreement was abandoned or modified. A. R. Fowler had paid plaintiff $200 on the agreement. On November 16th, A. R. Fowler paid to plaintiff the $235 paid to him by Boyd, and he took the chattel mortgage for $100, which was soon afterwards paid. So that he had on that day been paid in cash, and what he received as cash, $535, a sum equivalent to the first payment nominated in the written agreement. Plaintiff then made an absolute deed in fee of the land to Mr. Boyd. Instead of demanding from Boyd a mortgage of the land to secure the second payment of $500, and interest, he took an assignment of a forged note and mortgage for $800 from Boyd to A. R. Fowler. Why this was done, I don't know. Plaintiff, in one place in his testimony, seemed to have an idea that he owned the $800 note and mortgage; and in another place, that he held it as security for the balance due him on the land, to wit: $600. How a balance of $600 could, on November 16th, 1895, be figured out upon the terms of the old agreement, after deducting the payment made, I can't see.

While I must not be understood as intimating even in the slightest degree that plaintiff did wrong in changing the old agreement with Fowler; yet, inasmuch as the action actually taken was more beneficial to plaintiff than the old agreement was, it tends to show that plaintiff and Fowler did make a new agreement. But this $800 note and mortgage were forgeries, hence all of this trouble. A. R. Fowler knew that they were forgeries, and it is pretty certain that he forged them. Plaintiff took these forged papers, believ-

ing them to be genuine, and upon this belief made the deed to Boyd. Boyd knew nothing of these papers. They were dated November 16, 1895, the very day that plaintiff made the deed to Boyd. Plaintiff saw that they purported to be executed on that day, for he speaks of their execution upon that day. According to the trend of the testimony, I think that A. R. Fowler fixed them up that day, and did it for the purpose of deceiving plaintiff, by falsely pretending to comply with the terms of the plaintiff. Plaintiff thought that the $800 mortgage of Boyd to Fowler was worthless, because the legal title was not in Boyd when he made that mortgage. Plaintiff thought that said mortgage should be marked satisfied upon the record, disposed of. Plaintiff then thought that if he made a deed to Boyd which could put the legal title in Boyd, that Boyd could make an $800 note, secured by a valid mortgage of the land, to A. R. Fowler, and that Fowler could assign it to him. Now, Fowler pretended to do all these things, and his pretension deceived the plaintiff. But Boyd knew nothing of these changes, forged papers, &c., and they do not and cannot bind him. As to him they are worthless and of no force or effect. * * *

I hold that Boyd did not induce plaintiff to make the deed to him; that Fowler induced him to make the deed; that Boyd honestly and faithfully complied with the new contract between plaintiff and Fowler, as told to him by plaintiff, by raising cash, or its equivalent, sufficient to satisfy the demand of plaintiff as made known to him by plaintiff. That plaintiff's new contract with Fowler and the note and mortgage was known only to them, and not to Boyd; that Boyd got his title honestly by complying with his contract with A. R. Fowler, and by having Fowler to do all that plaintiff told him he required of Fowler. It is not disputed, that Boyd complied with his contract with Fowler. He accepted his deed from him, and gave him the $800 note and mortgage of January, 1895, when plaintiff said that $335 would enable him to get plaintiff's deed; he raised that money for Fowler, who paid it to plaintiff,

and plaintiff made his deed to Boyd. I think that Boyd
has acted legally and honestly throughout, and he should
not be mulcted to pay Fowler's debts, with which he had
nothing to do. McGee holds Boyd's genuine note and mort-
gage, lent his cash upon the belief that they were genuine.
They are genuine. Plaintiff sold his land to Boyd, made
a deed to him, and was moved to do so by his bargain with
A. R. Fowler. Boyd took the deed, and complied with his
every obligation, and with the contract as between Fowler
and plaintiff, according to plaintiff's statements of that con-
tract made to him. Boyd is an honest and innocent pur-
chaser. I hold that H. Y. Boyd's title to the land is valid;
that the forged mortgage of November 16th, 1895, is, as to
him, of no force or effect; and all that he owes to any party
to this action is the balance due on his $800 note and mort-
gage of January, 1895, in favor of A. R. Fowler, now held
as collateral by McGee, $806.02. H. Y. Boyd should pay
of this amount, to the defendant, B. M. McGee, $526.49, as
heretofore stated. This leaves a balance of $279.53 due to
some one by H. Y. Boyd. To whom should it be paid? I
think that it should be paid to the plaintiff. I lay no stress
upon the fact that this is a part of the purchase money of
the land. There is no such lien known to the law of this
State, as the vendor's lien for the purchase money. If he
wants a lien, he must, by appropriate means, create one.
This balance of $279.53 belongs to A. R. Fowler. The
forged mortgage of Boyd to Fowler, of November, 1895,
while of no force as against Boyd, is, upon the doctrine of
estoppel, good in plaintiff's hands as against Fowler. That
forged mortgage purported to be a security upon the land
to pay a debt which Fowler owed plaintiff. This balance
of money, belonging to Fowler, may be regarded as the land
he described in his forged mortgage. Considering, then, the
money as the land, and that it belongs to Fowler, plaintiff
has, as against Fowler, the right to regard the mortgage,
though forged, as valid, and as covering the said balance.
Can any other party to this action deny this claim of plain-

tiff? None of them had a lien upon this money, nor did they have a lien upon the land which it represents. Plaintiff has, in the manner indicated, a lien, equitable it may be, which entitles him to it. I need not consider the question as to how much A. R. Fowler owes to plaintiff; it is far more than the balance stated. The other parties to the action will get nothing in this cause.

From my view of the case, the amendments allowed by the master are immaterial, and need not be discussed. I think that Mr. McGee should not be required to pay any costs, as he has gained his case. I do not think that Mr. Boyd should be made to pay the costs of all the parties, because this litigation was not due to any default of his; he has acknowledged his liability to pay what he owed all the while, and the real contest was as to which claimant should it go. Plaintiff instituted this action, and much of it is due to his effort to enforce a forged note and mortgage which he believed to be true. I think that H. Y. Boyd should pay the costs and disbursements of Mr. McGee, his own costs, and one-half of the fees of the master; that plaintiff should pay one-half of the fees of the master and his own fees; and that each of the defendants, except Mr. McGee, should pay his own costs and disbursements.

The plaintiff, Thos. B. Whitmire, appealed from the said decree on the following grounds:

I. His Honor erred in holding, as a matter of fact, that the plaintiff and the said A. R. Fowler changed the terms of the written agreement entered into between them for the sale of the said land without the knowledge and consent of the said Boyd, it being respectfully submitted that the said finding is not sustained by the testimony in the case; but the testimony, on the other hand, shows that the plaintiff insisted upon the said Fowler and the said Boyd carrying out the said agreement, and they agreed thereto.

II. He erred in finding, as a matter of fact, that on the 16th day of November, 1895, Boyd paid $225 on the McGee

note to Fowler, and that Fowler paid it to the plaintiff; the testimony showing that the plaintiff agreed with the said Boyd and Fowler that they should pay to him the said sum of money on account of the original agreement entered into between himself and the said Fowler, and that the said money was paid by Boyd to the said plaintiff; in this connection he erred in not holding that this $335, together with what had already been paid plaintiff, would amount to what the original agreement called for.

III. He erred in holding that Boyd paid the plaintiff $365 on account of the purchase of the said land, the testimony showing that Boyd paid only $235, and the other $100 was paid by W. P. Fowler.

IV. He erred in holding that plaintiff accepted the note and mortgage sued on as "payment" of the balance due on the purchase of the land, the testimony showing that the plaintiff used this language in the sense of "collateral security," and, as a matter of fact, the testimony shows that the said note and mortgage were accepted by him as such.

V. He erred in not holding that at the time he accepted said note and mortgage, that he explained fully the transaction to the defendant, Boyd, and that the said Boyd admitted that the papers were genuine, and thereby induced the said plaintiff to part with his title; and in this connection he erred in not holding that the said Boyd is now estopped from disputing the validity of the same.

VI. He erred in holding that the testimony of the said Boyd, as to what passed between him and the plaintiff, was sustained by the preponderance of the testimony; and in this connection he erred in overruling the conclusions of the master, who was familiar with the witnesses and saw their demeanor upon the stand with reference thereto.

VII. He erred in concluding that the defendant, McGee, loaned the said Fowler money on the faith of the security deposited with him by said Fowler; the said McGee testifying himself that he refused to advance the money on the faith of the said security, and required the said Fowler to

obtain personal indorsement of the said note, which was done; and in this connection he erred in not adjudging that the said McGee having a note secured by personal indorsements, which security this plaintiff did not have, that he should be required to exhaust them before participating in the proceeds of this action.

VIII. He erred in decreeing that the defendant, McGee, should be paid $526.49 before this plaintiff; it being respectfully submitted that before Boyd's title could feed McGee's note or mortgage, Boyd would have to pay the plaintiff the balance due him on account of the purchase of the said land, under the agreement between Fowler and this plaintiff.

IX. He erred in adjudging that the plaintiff should be liable for any of the costs of this action, he having recovered judgment against the defendant, Boyd, and the Court having found that he was an innocent party, misled into taking the mortgage sued on through the fraud of another.

X. He erred in not holding that the defendant, Boyd, by his conduct with reference to this matter induced plaintiff to accept the note and mortgage sued on as collateral security for the balance due him on account of the purchase money of the said land, and acknowledged that the papers were genuine, after the transaction had been explained to him, as testified to by the plaintiff and as found by the master, and, therefore, would be estopped from disputing the validity of the plaintiff's mortgage, which, as to him and all claiming through him, would be genuine, and would cut off any prior incumbrances.

XI. Having concluded that the mortgage was a forgery, and that the plaintiff when he took it was ignorant thereof, and that he accepted it in payment of the balance of the purchase money, he erred in not adjudging because of these facts that plaintiff's title was obtained from him through the fraud of Fowler at least, and he would be entitled to be paid the balance of the purchase money before his title would be good in Boyd's hands, or feed the McGee note and mortgage.

XII. He erred in not holding that Fowler obtained the McGee note and mortgage through fraud, by representing that he was the owner of the property, and made the said Boyd a title thereto in consideration thereof, when in fact he had no title; that, therefore, the said note and mortgage would be nullities in the hands of Fowler, and the defendant, McGee, has no higher rights than he would have.

XIII. He erred in not sustaining the master as to his finding of fact, to wit: "That on the 16th day of November, 1895, the said Boyd paid to the plaintiff $235, and gave him a chattel mortgage to secure a balance of $100, which mortgage was afterwards paid, making a total of $335 in cash; and it was agreed by and between the said Boyd, the said Fowler and this plaintiff, that the note and mortgage sued on by plaintiff should be assigned to him to secure the balance of $600, which it was understood and agreed was due the plaintiff on account of the sale of the land." The said finding being sustained by the weight of the testimony.

XIV. He also erred in not sustaining the finding of fact on the part of the master as follows: "I further find as a matter of fact that before accepting the said note and mortgage, the plaintiff inquired of the defendant, Boyd, if the said note and mortgage were genuine papers, and was assured by the said Boyd that they were, and the plaintiff was induced by the representations of the said Fowler and the said Boyd to part with his title and receive the said papers as collateral security for the balance due him as aforesaid. That thereupon, and in consideration of the said $335 and the assignment to him by the said Fowler, with the knowledge and consent of the defendant, Boyd, of the note and mortgage sued on to secure the sum of $600, the balance due on account of the purchase of the said land, the plaintiff executed and delivered to the said H. Y. Boyd a warranty title for the said premises." The said finding being sustained by the weight of testimony.

XV. He erred in not sustaining the conclusion of law on the part of the master as follows: (a) That the note held by

the defendant, McGee, of date January 22d, 1895, and the mortgage held by the defendant, Redwine, given to secure the same, are non-negotiable, and the assignees thereof took the same subject to any equities existing between the said Boyd and the said Fowler. (b) That the consideration of the said papers was the purchase of the land described in the complaint; that at that time the said Fowler had no title thereto; that he falsely and fraudulently represented to the said Boyd that he did have such title; and if the said Fowler were before the Court seeking to establish the said indebtedness as against Boyd, or as against this plaintiff, he could not recover. (c) That the defendant, McGee, as assignee of Fowler, has no higher rights than he had, and, therefore, he cannot recover anything in this action. All of the above propositions being sound law, applicable to the undisputed facts in the case, and, therefore, conclusive of the rights of the defendant, McGee, herein.

XVI. Upon the theory that plaintiff's note and mortgage are forgeries, he erred in not sustaining the conclusion of the master, that in that event plaintiff's title was obtained from him through fraud, and before the other defendants could have any equity in the land, they ought to comply with the agreement between the plaintiff and said Fowler, the performance of which the defendant, Boyd, afterwards undertook; and that plaintiff's equities in the premises for the balance of his purchase money under the said agreement would be superior to those of the other defendants.

XVII. He erred in not sustaining the conclusion of the master that Fowler held the land subject to the plaintiff's rights under the aforesaid agreement; the defendant, Boyd, acquired only Fowler's rights, and that their assignees occupied no higher position than they occupied. Boyd's right, therefore, would be the right to the title of the land upon the payment to the plaintiff of the balance of the purchase money due him, and the right of the defendant, McGee, rises no higher.

XVIII. He erred in not sustaining plaintiff's exceptions

to the master's report, to wit: 1. That he is entitled to $600, and interest thereon from November 25, 1895, and ten per cent. thereon as attorney's fees, being the amount due him as agreed upon by the parties at the time the mortgage sued on was assigned to him, as shown by the evidence. 2. Upon the theory that the mortgage sued on was a nullity, then the master erred in not holding that the amount due plaintiff was the amount called for by the original agreement between himself and Fowler, introduced in evidence, with interest thereon, less $325, paid on November 25, 1895— which amount, under this view of the case, the master should have found due the plaintiff. 3. The master erred in not holding that plaintiff was entitled to ten per cent. attorney's fees on the amount found to be due him.

The defendant, H. Y. Boyd, also appeals upon the following grounds:

I. Because his Honor erred in holding the defendant liable for the payment of the note and mortgage which were assigned by A. R. Fowler to B. M. McGee, when he should have held that the defendant is liable only for the payment of $465, with interest thereon from November 16, 1895, to date at seven per cent. The testimony showing: (1) that there was no consideration for said note and mortgage; (2) that said note and mortgage had been obtained from defendant through false and fraudulent representations by the assignor of B. M. McGee; (3) that said note and mortgage were non-negotiable, and in the hands of B. M. McGee were subject to the equities existing between the defendant and A. R. Fowler; (4) that defendant received his title directly from plaintiff on the 16th day of November, 1895, and paid through A. R. Fowler to plaintiff on account of the purchase money $335.

II. Because, if the defendant is held liable at all on the note and mortgage assigned to B. M. McGee, his Honor erred in holding that defendant is entitled to credit for $235 on account thereof, when he should have held that defend-

ant is entitled to a credit of $335; the testimony showing that such last named sum was paid by the defendant to the plaintiff.

III. Because his Honor erred in holding that the defendant is liable for the payment of ten per cent. as attorney's fees to B. M. McGee, when he should have held, if the defendant was liable on said note and mortgage at all, that such additional payment is not authorized by the terms of the said note; the testimony showing no facts which would entitle B. M. McGee to attorney's fee.

IV. Because his Honor erred in holding that the defendant should pay one-half the costs of the plaintiff, when he should have held that such costs should have been borne by said plaintiff; the testimony showing that the action was instituted on a forged instrument upon which defendant is in no wise liable.

V. Because his Honor erred in holding that the defendant should pay the costs of B. M. McGee, when he should have held that said B. M. McGee should pay his own costs; the testimony showing that the note and mortgage sought to be enforced by said B. M. McGee were without consideration and not binding on the defendant.

The respondent, B. M. McGee, gave notice that he would seek to sustain the decree of Judge Aldrich upon the following additional grounds:

I. That the Judge's holding that the plaintiff was not entitled to a purchase money lien for the balance due him by Fowler should be sustained on the further grounds: (1) The allegations of the amended complaint are insufficient to set up such a lien, and (2) the master erred in allowing the plaintiff, after the testimony had been closed, to amend his complaint by setting up a lien independent of the mortgage; it being submitted that this was the introduction of a new cause of action and a substantial change in the complaint.

II. The Judge's holding that H. Y. Boyd was indebted

to B. M. McGee on the note and mortgage set forth in Mc-Gee's answer should be supported on the additional ground that Boyd's original answer did not allege any failure of consideration as to this note and mortgage; and it is submitted that the master erred in allowing Boyd to amend his answer after the close of the testimony so as to set up such a defense, the change being substantial.

III. That Whitmire, at the time of the assignment of the papers to him set forth in the complaint, had notice of the prior note and mortgage, and that the latter was duly recorded. He was, therefore, charged in law with notice that said papers might have been transferred by Fowler to another, and that Fowler might be estopped from claiming that the said note and mortgage were not a first lien on the land; and Whitmire, in receiving the assignment of the papers from Fowler, took the same subject to all equities and disabilities attaching thereto in Fowler's hands.

IV. That Boyd, before completing the transaction with Fowler in January, 1896, had inquired of Whitmire as to whether he had sold the land to Fowler, and being assured that he had done so, Boyd closed the transaction with Fowler; and that Whitmire was thereby estopped as against Boyd and his assignees from saying that he had not conveyed the land to Fowler.

*Mr. Jos. A. McCullough*, for plaintiff, appellant, cites: *Boyd is estopped from disputing validity of note and mortgage sued on:* 24 S. C., 393; 12 Wall, 365. *Plaintiff's equity is superior to that of all the defendants:* 20 S. C., 230; Bail. Eq., 223, 463; Harp. Eq., 184; 3 S. E. R., 593; 9 S. E. R., 486. *Not error to permit plaintiff to amend his complaint:* Code, 294; 41 S. C., 145; 39 S. C., 334.

*Mr. Wm. G. Sirrine*, for defendant, Boyd, appellant. No citations.

*Messrs. Haynsworth, Parker & Patterson*, contra, cite: *Amendments to complaint and answer of Boyd were impro-*

*per:* 51 S. C., 154; 49 S. C., 513; 31 S. C., 199; 24 S. C., 221; 21 S. C., 226. *Whitmire took the papers subject to all defenses:* 22 S. C., 30; 1 Spear, 120. *No ground for rescission:* 21 S. C., 226; 15 S. C., 174; 26 S. C., 424; 28 S. C., 449.

Oct. 5, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff, Whitmire, being the owner of the tract of land described in the complaint—subject, however, to a mortgage held by one McDowell—some time in the fall of 1894, entered into a verbal contract with one A. R. Fowler, for the sale of the land, upon which Fowler paid to Whitmire the sum of $200 on account of the purchase money, and went into possession of the land. In December, 1894, Fowler, representing himself to be the owner of the land, agreed to sell the land to the defendant, H. Y. Boyd, and put him in possession. On the 22d of January, 1895, this agreement was consummated, and the said Fowler made a deed for the land to the said Boyd, for the consideration therein expressed of $2,000, which was made up of the amount due on the McDowell mortgage—$1,200—and the note under seal of Boyd to Fowler for $800, secured by a mortgage on the land, which note and mortgage were, on the day last named, delivered by Boyd to Fowler. On the 19th of February, 1895, Fowler borrowed from the defendant, McGee, the sum of $400, for which he gave his note, indorsed by M. J. Harris and J. D. Harris, and also transferred to and deposited with McGee, as collateral security for the payment of said notes, the $800 note above mentioned, which Boyd had given to Fowler, together with a mortgage purporting to have been executed by Boyd to secure the payment of the said note for $800, but which proved to be a forgery—the said Fowler retaining the genuine mortgage, which he afterwards assigned to another party, whose claim thereunder has been rejected, and as he does not appeal, nothing further in relation to that transfer need be stated. Matters remained in this condition until the 22d day of May, 1895, when the plaintiff and

the said Fowler entered into the following written agreement in reference to the land described in the complaint: "This agreement made between T. B. Whitmire and A. R. Fowler, whereby it is agreed that the said A. R. Fowler shall have the use of a certain tract of land belonging to said T. B. Whitmire during the year 1895 (here describing the land), and shall pay the said T. B. Whitmire, on or before December 1st, 1895, $150 for the use of the same. And the said A. R. Fowler shall have, as his own, all the tools left on said place belonging to said T. B. Whitmire. It is further agreed, that if the said A. R. Fowler shall pay to the said T. B. Whitmire, on or before December 1st, 1895, $500, with interest from January 1st, 1895, at eight per cent. per annum, including the above $150, and shall execute to the said T. B. Whitmire a mortgage for $500, payable January 1st, 1898, on said land, bearing interest from January 1st, 1897, at eight per cent. per annum, then the said T. B. Whitmire shall execute and deliver to the said A. R. Fowler a warrantee deed to said 188 acres of land." In the fall of 1895, Boyd, who was in possession of the land, discovering that Fowler had no title when he conveyed the land to him on the 22d of January, 1895, and being told that if he remained on the land he would have to pay rent for the same to the plaintiff, went to see plaintiff upon the subject, and as to what passed between them there is a conflict of testimony. The result, however, was that, on the 16th of November, 1895, the parties—Boyd, Whitmire, and A. R. Fowler, together with a brother and brother-in-law of said Fowler—met in the city of Greenville for an adjustment of the matter, when the following occurred: Boyd paid to Fowler $235 in cash, and delivered to him a mortgage on some other property, to secure the payment of $100 accepted by plaintiff as cash, which was soon afterwards paid by another person, which money and mortgage were immediately turned over to plaintiff by Fowler, and at the same time Fowler transferred to the plaintiff a note and mortgage for $800, purporting to have been executed

22—53

by Boyd, but which were proved to be forgeries on the trial of this case, to secure to the plaintiff the balance of the purchase money of the land under the contract with Fowler, and thereupon the plaintiff, at the instance of Fowler, executed a deed to Boyd for the land. There was direct conflict of testimony as to what passed between the plaintiff and Boyd when this transaction was being consummated—the plaintiff claiming that the said Boyd assured him that the note and mortgage transferred to plaintiff by Fowler were good and valid papers before he executed the deed to Boyd, while Boyd insisted that he knew nothing about those papers, but that after the deed was executed, the plaintiff showed him a paper, so folded as to conceal everything but the signature, and asked him if that was his signature, to which he replied, "It looks like it," and that plaintiff then asked: "Do you know whether or not it is yours?" to which he replied: "No, sir, but it looks like it." It appears that after this transaction took place, but at what particular time does not appear, the cash paid to Fowler by Boyd on the 16th of November, 1895—$235—was credited on the genuine note of Boyd to Fowler for $800, which was then held by McGee by his consent. The plaintiff having made several demands upon Boyd for the payment of the interest on the $800 note transferred to him on the 16th of November, 1895, which were not complied with by Boyd, this action was commenced on the 10th of September, 1897, to foreclose the mortgage to secure the payment of the note for $800, which purported to have been executed by Boyd to Fowler on the 16th November, 1895, and by Fowler assigned to plaintiff on the same day.

The case was referred to the master, "to take the testimony and report his conclusions of law and fact, together with any special matter." At the close of the testimony, some of which tended to show that the note and mortgage which constituted the basis of the action were forgeries, the plaintiff moved to amend his complaint by alleging that he accepted in good faith the note and mortgage as a part of

the purchase money of the land conveyed by him to the defendant, Boyd, with the knowledge and consent of said Boyd, and upon his assurance that said papers were genuine, and alleging that Boyd is thereby estopped from disputing the validity of the same. Further: "That in any event this plaintiff has an equity in the said land to the extent of the balance due him on account of the purchase money thereof, and he asks that the land be sold, if his debt is not otherwise paid, and that out of the proceeds of said sale that his debt and the costs of this action be paid first, before any of the other parties are entitled to share in the distribution of the same; and the defendants be allowed to amend as they may be advised." These amendments were allowed by the master, to which counsel for the defendant, McGee, excepted. The defendant, Boyd, also moved to amend his answer, at the close of the testimony, by adding thereto the following allegations: "That he purchased the premises described in the complaint from one A. R. Fowler, who represented himself to be the owner thereof, and plaintiff also represented to defendant that the title to said premises was in said A. R. Fowler, and is thereby estopped from claiming any interest in the premises on account of the alleged default of said A. R. Fowler in paying the purchase money. That this defendant took possession of the said premises upon the representations made to him as aforesaid, and assumed incumbrances to the amount of $1,200, and has since paid the sum of $335 to plaintiff, and received his conveyance or deed to said premises. That defendant stands ready and willing to pay into Court the sum of $465, with such interest as is now due, being the balance due by defendant in full on account of his said purchase. Defendant further alleges that if it shall be held that he is liable on any papers except the genuine note admitted by him to have been executed on the          day of January, 1895, that said papers are without consideration, and defendant prays that the same be delivered up to be cancelled." These amendments were

likewise allowed by the master, and his action therein was excepted to. The case came before his Honor, Judge Aldrich, for a hearing upon the report of the master and the exceptions thereto, and he rendered his decree, which is set out in the "Case," and should be incorporated in the report of this case. To this decree the plaintiff and defendant, Boyd, filed numerous exceptions, and the defendant, McGee, gave notice of additional grounds upon which he would ask this Court to sustain the decree. These exceptions and additional grounds should likewise be incorporated in the report of this case.

We do not propose to consider the exceptions *seriatim*, but rather to consider what we understand to be the controlling questions presented by the exceptions and these additional grounds. The claims set up by those of the defendants who do not appeal from the Circuit decree need not be stated or considered, as they have been eliminated from the case, having been finally disposed of by the decree of the Circuit Judge, from which those defendants have not appealed. Our inquiry, therefore, is only as to the rights of the plaintiff and the defendants, Boyd and McGee.

In considering the rights of the plaintiff, it will first be necessary to determine whether there was error in allowing the amendment to the complaint above set forth after the testimony was closed. The object of the action unquestionably was to obtain payment of the balance due on the purchase money of the land described in the complaint by subjecting the land to the payment thereof. The plaintiff, holding what he undoubtedly supposed to be the genuine note and mortgage of the person who had acquired possession of the premises from the original vendee, very naturally framed his complaint upon these evidences—the note and mortgage—of his claim; but when the testimony, for the first time, disclosed the fact to him that these supposed evidences of his claim were forgeries, and, therefore, nullities, he then asked leave to amend his complaint, *not* by changing his original claim, but by sim-

ply alleging other evidences of the *same claim* found in the terms of the original contract of sale. The Code makes liberal provisions for amendments of the pleadings, so as to effect substantial justice, by allowing the insertion of other allegations material to the case; and the only limitation seems to be that such amendments will not be allowed, during or after the trial, where such amendments "change substantially the claim or defense." See Code, sec. 194; *Hall* v. *Woodward*, 30 S. C., 564. Accordingly, we find that in *Tarrant* v. *Gittelson*, 16 S. C., 231, the plaintiff was allowed, during the trial, to amend his complaint, which was based upon a claim for work and labor, by inserting an allegation that the work and labor was done under a special contract. So in *Sibley* v. *Young*, 26 S. C., 415, a complaint based upon sealed notes, calling them promissory notes, was allowed to be amended by basing the claim upon an open account for which the notes were given, for the reason that there was no substantial change in the claim. The Court, in that case, used this language: "It is the same debt which is sought to be recovered by the same plaintiffs from the same defendants, and the only difference is in the ground upon which the liability is based." That case was recognized and followed in the subsequent case of *Moore* v. *Christian*, 31 S. C., at page 341. These authorities, with others that might be cited, clearly show that there was no error in allowing the amendment in question, for there was no change, certainly no substantial change, in the claim of the plaintiff. Especially was this so when, as in this case, the order allowing the amendment also allowed the defendants to amend their answer, if so advised. The relation between the plaintiff and Fowler must, therefore, be regarded as that of vendor and purchaser under an executory contract of sale upon which only a part of the purchase money has been paid, and such a relation is practically that of mortgagor and mortgagee (*Lynch* v. *Hancock*, 14 S. C., at page 86)—that is to say, the vendor continues to hold the legal title as security for the payment of the

balance of the purchase money, and the vendee, while he has no legal title, does acquire an equitable title, subject to the payment of the balance due on the purchase money, which he may sell or mortgage, although it is not subject· to the lien of a judgment. *Roddy* v. *Elam*, 12 Rich. Eq., 343, cited with approval in *Lake* v. *Shumate*, 20 S. C., at page 30; *Richards* v. *McKie*, Harp. Eq., 184. Hence, when Fowler conveyed the land to Boyd, he only conveyed this equitable title, subject to the McDowell mortgage, about which there seems to be no dispute, and also subject to the claim of the plaintiff for the balance of the purchase money; and when Boyd mortgaged the land to Fowler, such mortgage only covered this equitable title, subject to the same incumbrances; and, of course, when Fowler assigned this mortgage (for it cannot be questioned, under the authorities cited by the Circuit Judge, that the assignment of the note carried with it the mortgage given to secure its payment) to the defendant, McGee, he took it subject to the same incumbrances.

While, under this view of the case, as it appears upon the face of the papers, there could be no doubt that plaintiff would have a prior equity to enforce the payment of the balance due him on the purchase money under the written agreement between himself and Fowler, yet it is claimed by Boyd, in his amended answer, that he was induced to buy the land, not only by the representations of Fowler, but also of the plaintiff; that the title to the land was in Fowler, and that upon these representations he went into possession of the land, assumed incumbrances to the amount of $1,200, has since paid to the plaintiff $335, and received his conveyance of the premises, and that plaintiff is thereby estopped from making any claim upon the land. It will be observed that neither the plaintiff nor the defendant, McGee, excepted to so much of the order as allowed Boyd to amend his answer as above stated, though the defendant, McGee, did except to so much of the order as allowed Boyd to set up the claim that the note and

mortgage transferred to McGee by Fowler was without consideration. So that Boyd's claim that the plaintiff is estopped, set up by his amended answer, is properly before us. It seems to us, however, that the testimony fails to sustain the allegations upon which the claim of estoppel rests. Boyd's own testimony shows that he had bargained for the land with Fowler before he ever approached the plaintiff upon the subject, and was only induced to do so by a report that Whitmire, the plaintiff, was trying to rent the land, and all that Whitmire told him, according to his own version, was that he had sold the place to Fowler, and this was true. Whitmire, the plaintiff, was not asked by Boyd whether Fowler had paid for the land, or whether he had given him a deed, and we do not see that the plaintiff was under any obligation to volunteer information upon these points to Boyd. Indeed, it seems to us that the defendant, in buying the land from Fowler, who was his brother-in-law, relied entirely upon his representations, by which he seems to have been grossly deceived and defrauded; but we do not think that the testimony shows that the plaintiff in any way contributed to such deception and fraud. Nor does the evidence show that Boyd ever assumed the payment of the amount due on the McDowell mortgage, in such a way as to make him personally liable for the payment of that debt, as it only shows that he knew that mortgage would have to be satisfied before he could obtain a title clear of that incumbrance. So, also, as to the cash payment of $335, alleged in the amended answer. That money was paid by Boyd to Fowler, and by him turned over to plaintiff on account of the first payment called for by Fowler's contract with plaintiff for the purchase of the land; and so much of that amount, $235, as was furnished by Boyd individually was credited by Fowler on Boyd's genuine note to Fowler for $800, then in the hands of McGee, at the request of Boyd. So that the claim of estoppel set up by Boyd's amended answer cannot be sustained.

Our next inquiry is as to the effect of the transaction of

the 16th of November, 1895, for up to that date it is quite clear the plaintiff had never parted with the legal title to the land, and had a right to retain the same as a security for the payment of the balance of the purchase money due under his written contract with Fowler, hereinabove set out, in priority to the claims of any of the other parties to this action, he having done nothing, as we have seen, to impair or destroy his rights. Exactly what occurred on the 16th of November, 1895—or, rather, all of what occurred—is left in no little doubt and obscurity by the conflict of testimony. This much, however, is certain, that the plaintiff was induced to make a deed to Boyd (who was then in possession of the land by virtue of a previous purchase of Fowler's interest) for the said land in consideration of the payment to him in cash, or what was received as cash, of the sum of $335, which with the amount previously paid by Fowler, $200, was near about sufficient to satisfy the first payment called for by the written contract between plaintiff and Fowler, and the assignment by Fowler to plaintiff of a note for $800, secured by a mortgage of the said land, purporting to have been executed by Boyd to Fowler, either as collateral security for the second payment called for by said written contract or in satisfaction thereof, about which there is some doubt; but, in the view which we shall take, it makes no difference whether the transfer was made as collateral security or in satisfaction of said second payment. These papers, thus transferred by Fowler to plaintiff, were represented by Fowler to be genuine and so believed to be by plaintiff; but were, in fact, forgeries, and so known to be by Fowler at the time, as there is every reason to believe that he perpetrated the forgeries. From these unquestionable facts it is very clear that the plaintiff was induced to make this deed by the grossest fraud on the part of Fowler, at least; and if he were the party before the Court undertaking to set up such deed or claim any rights under it, there can be no doubt that a court of equity would unhesitatingly declare the deed null and void for fraud, and,

therefore, insufficient to confer any rights whatever. If this be so, then those claiming under Fowler would be in no better position; and both of these defendants, Boyd and McGee, are in this position. Boyd is the alienee of Fowler, having purchased his interest in the land, and only in this way could he claim a conveyance from the plaintiff, and the deed was made to Boyd, at the instance and by the request of Fowler, and he can claim no higher or greater rights than Fowler. The cash payment was made by Boyd—*not* to the plaintiff but to Fowler—and the money was paid over by him to plaintiff, and Boyd received credit on his genuine note to Fowler for so much of the cash payment as he individually furnished. As to McGee, he is the assignee of unnegotiable securities transferred to him by Fowler, and, certainly, as to these securities, he stands in no better position than Fowler. Besides, while we do not think that the testimony is sufficient to show any guilty knowledge on the part of Boyd, in the perpetration of the fraud by Fowler upon the plaintiff, whereby he obtained the deed upon which he relies, yet there is much in the testimony well calculated to excite his suspicions, and prompt him to inquiry, which he does not seem to have made. There is no doubt that Boyd knew that he had executed but one note and mortgage, and he also knew that such note had been transferred to McGee at least two months before the transaction which took place on the 16th November, 1895, for he says he found out in the summer of 1895 that McGee held his note, and McGee says in his testimony: "I notified Mr. Boyd in July or August, 1895, that I had an assignment of this note; he never disputed his liability on the note and mortgage. He came in and said that was the note he had given, and wanted the credit given"—referring to the credit of $235 which was entered on the $800 note held by McGee as above stated. He, therefore, knew both before and after the 16th of November, 1895, that his genuine note—the only one he had ever given—was in the hands of McGee; and yet, when he was shown a paper on the 16th of Novem-

ber, 1895, which plaintiff testified was the forged mortgage, which that day was transferred to him by Fowler, and asked if that was his signature, his only reply was: "It looks like it;" and when again asked the question: "Do you know whether or not it is yours?" he replied: "No, sir, but it looks like it." Again, when the plaintiff wrote several letters to Boyd, asking for payment of interest on the forged note, which had been transferred to plaintiff by Fowler, to only one of which he replied as follows: "I received your letters, and should have answered promptly, but hardly knew what to say in reply. The note I gave A. R. Fowler is payable January 1st; therefore, I did not know the interest would be due before January 1st." When Boyd was on the stand, testifying in regard to this letter, he said: "I had seen the genuine note before I wrote the letter to Mr. Whitmire. I don't know why I did not inform Mr. Whitmire that the paper he held was a forgery." The plaintiff, on the other hand, testifies that he showed Boyd the note and mortgage transferred to him by Fowler, and asked him as to his signature: "I did not have the mortgage folded so as to conceal all except the signature when I asked him about it. He said that was his signature. He did not say, 'It looks like it, but I won't be certain.' He acknowledged his signature without qualification; if he had not done so, I would not have taken the papers." When the plaintiff was recalled as a witness, he said: "I did not refuse to allow Mr. Boyd to have the paper in his hands; I explained the nature of the paper to him." For the reasons above stated, and in view of all the testimony in the case, we cannot hold that the deed of 16th of November, 1895, from the plaintiff to Boyd, divested the plaintiff of the legal title to the land, and he can, therefore, continue to hold the same as security for the payment of the balance of the purchase money, superior to the claims of the defendants. It is contended, however, by one of the counsel, that this result can only be attained by a rescission of the transaction of the 16th of November, 1895, involving the necessity for a return of the

cash payment made on that day to the plaintiff, and that no case for the rescission of a contract is stated in the pleadings. We cannot accept that view. Here the deed from plaintiff to Boyd, of the 16th of November, 1895, is set up *as a defense* to the equitable claim of the plaintiff, and the burden of proof is upon the defendants to sustain such defense, and for this purpose they must show a *valid* conveyance of the legal title by the plaintiff; and this, as we have seen, they have failed to do, for the deed relied on has been shown to be void for fraud. So far as the necessity for a return of the cash payment is concerned, it is sufficient to say that this is a matter which concerns Fowler alone, as he made the cash payment to the plaintiff, and he is not a party to this case. Even if he were, it is not likely that a court of equity would pay much regard to the claims of a party whose gross and criminal frauds have given rise to this whole controversy.

Again, it is urged that inasmuch as the genuine mortgage executed by Boyd to Fowler on the 22d January, 1895, to secure the note for $800 of that date, now in the hands of McGee, was duly recorded, the plaintiff was thereby affected with notice of that mortgage. But notice of what? the plaintiff knowing that he had not then even formally parted with the legal title, was thereby affected with notice *only* of the fact that Boyd had mortgaged the equitable estate in the land which he had acquired by his purchase from Fowler, which, as we have seen, was subordinate to the legal title which the plaintiff was entitled to hold as the first security for the payment of the balance of the purchase money. It was analogous to a case in which a senior mortgagee had received notice of a junior mortgage, and such a notice would in no way affect the lien of the senior mortgage.

The second additional ground upon which the defendant, McGee, asks this Court to sustain the decree of the Circuit Judge is based upon the ground that there was error in allowing Boyd to amend his answer by setting up as an ad-

ditional defense to the claim of McGee, "failure of consideration" as to the note and mortgage held by McGee.

It will be observed, however, that the amendment allowed was to permit the defendant, Boyd, to set up as a defense to that note—*not* failure of consideration, but that this note which is under seal and mortgage are "*without* consideration," a different defense from that of *failure* of consideration, for the one may be set up to an action based upon an instrument under seal, while the other cannot, as the seal, of itself, imports a consideration. But waiving this, while we think there was error in allowing the amendment, during the trial, inasmuch as it permitted a distinct and separate defense to be set up, thereby substantially changing the defense set up in the original answer, yet such error was entirely harmless, for two reasons: 1st. Because the defense rested upon the unfounded assumption that Boyd had no estate whatever in the land which could be the subject of mortgage; whereas, as has been shown above, Boyd did have an equitable estate in the land which was the subject of mortgage. 2d. Because, by the express terms of the order allowing the amendment, it was allowed only upon the contingency that Boyd shall be held liable "on any papers except the genuine note," and this contingency has not occurred, for he is not held liable on any other papers.

The foregoing views render it necessary that the Circuit decree, in respect to the costs of the plaintiff and the defendants, Boyd and McGee, be modified as will hereinafter be directed.

Having thus disposed of the material questions presented by the several exceptions and the additional grounds upon which this Court is asked to sustain the Circuit decree, it only remains for us to announce the practical result of our conclusions: 1st. Subject to the lien of the McDowell mortgage, which no one seems to dispute, and as between the parties to this case, the plaintiff is entitled to the first lien upon the land described in the complaint, to secure the bal-

ance due him under the written contract between him and Fowler, hereinabove set out, after deducting all payments made under that contract, to wit: the sum of $535. 2d. That if this lien in favor of the plaintiff shall be extinguished by Boyd within a time to be prescribed for that purpose, then the defendant, McGee, is entitled to a lien on said land to secure the amount due him on the note of Boyd to Fowler for $400, now held by the defendant, McGee; and if this lien shall be extinguished within a time to be prescribed for that purpose, then the defendant shall be entitled to hold said land, free of all incumbrances except that of the McDowell mortgage. 3d. If the above mentioned liens in favor of the plaintiff and the defendant, McGee, shall not be extinguished within the time limited for that purpose, then that the land described in the complaint be sold by the proper officer, at such time and upon such terms as shall be prescribed by the order of the Circuit Court, and that the proceeds of the sale be applied, first, to the payment of the costs and expenses of such sale, together with any taxes that may be due on said land; next to the payment of such balance as may be found due to plaintiff under his contract for the sale of the land above referred to; and next to the payment of the amount which may be found due to the defendant, McGee, on the note for $400 now held by him and above referred to; and should there be any balance of the proceeds of the sale, let the same be held subject to the further order of the Court. 4th. That the defendant, Boyd, pay the costs of this case, except those of the defendants, Frank Hammond, W. A. Fowler (called W. P. Fowler in the Circuit decree), J. B. Redwine, and W. A. Hudson, who are therein required to pay their own costs respectively.

The judgment of this Court is, that the judgment of the Circuit Court be reversed in so far as it conflicts with the views above presented, and that in other respects it be affirmed, and that the case be remanded to the Circuit Court

for the purpose of having the views herein announced carried into effect.

MR. JUSTICE GARY *did not sit in this case.*