## 12208

### EPPS *ET AL.* v. McCALLUM REALTY COMPANY *ET AL.*

(138 S. E., 297)

1. Deeds—At Common Law, Deeds and Instruments Affecting Real Estate Need Not be Recorded.—At common law, deeds of conveyance and other instruments affecting real estate were not required to be recorded.

2. Records—As Between Parties, Instruments Contemplated by Recording Act Need Not be Recorded (Civ. Code 1922, § 5312).—As between parties thereto, it is not necessary to validity of any instrument contemplated by Civ. Code 1922, § 5312, that it be recorded, since recording becomes material only where there are double conveyances by the same person.

3. Vendor and Purchaser—Actual or Constructive Notice Prevents Plea of Bona Fide Purchaser.—Either actual or constructive notice will prevent plea of *bona fide* purchaser for value without notice.

4. Fraudulent Conveyances—Vendor and Purchaser—Purpose of Recording Act Held to Protect Subsequent Creditors and Purchasers for Value Without Notice (Civ. Code 1922, § 5312).— Purpose of Civ. Code 1922, § 5312, requiring deeds of conveyance to be recorded, was to protect subsequent creditors and purchasers for value without notice.

5. Fraudulent Conveyances—Vendor and Purchaser—Law Requiring Recording of Deeds of Conveyance Must be Construed in Connection With Law Requiring Enforceable Agreements to be in Writing (Civ. Code 1922, §§ 5312, 5515).—Civ. Code 1922, § 5312, requiring deeds of conveyance to be recorded, must be construed in connection with Section 5515, requiring enforceable agreements to be in writing, since section requiring recording could relate to enforceable agreements only.

6. Vendor and Purchaser—Executory Contract for Sale of Land Held "Conveyance" Within Meaning of Law Requiring Such Instruments to be Recorded (Civ. Code 1922, § 5312).—An executory contract for the sale of land *held* to constitute a deed of conveyance as contemplated by Civ. Code 1922, § 5312, requiring such instruments to be recorded, since such contract conveys or transfers

Note: On the question as to purpose of Recording Acts generally, see 23 R. C. L., 171.

As to necessity of record of executory contracts for the sale of real estate, see annotation in 26 A. L. R., 1546; 23 R. C. L., 175; 5 R. C. L. Supp., 1235.

On power of Legislature to construe statutes, see 25 R. C. L., 1047; 5 R. C. L. Supp., 1361.

an interest in real estate which may be mortgaged by vendee, and is devisable and descendible, and may be assigned or become subject to mechanic's lien.

7. Constitutional Law—Legislature May Not Construe Statute.—It is not the function of the legislative branch of the government to place the final construction on a statute.

8. Fraudulent Conveyances—Vendor and Purchaser—Possession Under Unrecorded Executory Contract of Sale Held Not "Constructive Notice" Affecting Rights of Subsequent Creditors or Purchasers for Value (Civ. Code 1922, §§ 5312, 5313).—Under Civ. Code 1922, § 5313, possession of real estate under executory contract of sale, which was not recorded as required by Section 5312, *held* not to operate as constructive notice so as to affect rights of subsequent creditors or purchasers for value without actual notice.

9. Adverse Possession—Person in Possession Under Contract, Who Has Not Paid Whole of Purchase Money, Cannot Acquire Title by Limitation Against Vendor.—One who goes into possession of land under a contract to purchase it, and has not paid the whole of the purchase money, cannot acquire title against vendor by the statute of limitations.

10. Mortgages—Person Made Party to Foreclosure Action Because of Possession Under Contract to Purchase Will Not be Required to Pay All Costs.—Where, in action for foreclosure of mortgage, person in possession under contract of sale was made party as claiming some interest therein, such person will not be required to pay all costs of action, where it was necessary anyway that plaintiffs institute suit for foreclosure.

11. Estoppel—Person Placing it Within Power of Another to Perpetrate Wrong Must Suffer as Between Two Innocent Parties.—Where one of two innocent parties must suffer, it must be he who has placed it within the power of the malefactor to perpetrate the wrong.

Before Wilson, J., Sumter, November, 1925.  Reversed.

Action by R. D. Epps and others as trustees against the McCallum Realty Company, Lizzie Rogers, and another. Judgment for defendant last named, and plaintiffs appeal. Reversed and remanded.

The master's report and the decree of Judge Wilson, with exceptions thereto, are as follows:

MASTER'S REPORT

This is an action to foreclose a mortgage made by McCallum Realty Company to plaintiffs, dated March 25, 1921,

to secure its bond, of even date therewith, conditioned for the payment of $700, one year after date, with interest at the rate of 7 per cent. per annum, payable annually, unpaid interest to bear interest at the same rate. The mortgage described the land as follows:

All that lot of land with the dwelling and improvements thereon, in the state and county aforesaid, fronting 106.3 feet on Cleveland Street of said city, and bounded as follows: Northeast by lot No. 2 on said plat hereinafter referred to; southeast by said Cleveland Street; and on the west by land of estate of R. C. McFaddin, this lot being designated as Lot No. 1 on plat made by McLellan & Palmer, recorded in Plat Book F-4, at page 166.

The McCallum Realty Company, after the delivery of the bond and mortgage, went into bankruptcy, and W. L. Marshall, trustee in bankruptcy, is made a party, but neither the company nor the trustee has answered.

The defendant Lizzie Rogers answers, denying knowledge of the bond and mortgage, and setting up that long before the execution of the alleged mortgage she entered into an agreement with McCallum Realty Company to purchase the lot above described, and, under and in pursuance of said agreement, went into possession thereof, and has continuously thereafter been in open, adverse and notorious possession thereof, claiming her right therein under her agreement with said company, all of which plaintiffs and their predecessors in interest knew, or ought to have known; and that whatever rights the plaintiffs may have in the premises are subordinate to those of herself; that at the time of making said agreement she paid the seller $100, and has since made all the payments to it on account of the purchase price, in accordance with the contract, except such as were waived by the seller; that from time to time she asked the company for a statement of her accounts, so that she might pay up in full and obtain a conveyance of the premises; and that she repeatedly offered to pay the balance due, but was put off

by the company on one pretense or another, and prevented from making payment of the balance, and the conveyance was not made to her; that she has been at all times ready and willing to pay such balance, and so informed the company many times.

There is no conflicting testimony as to the above allegations of fact by this defendant, and practically no dispute as to the balance due under the contract, which balance will be referred to later herein.

This defendant is, and has been, continuously in possession of the lot described under an unrecorded contract of purchase and sale from a time long antedating plaintiff's mortgage, and the sole question at issue here is whether or not possession by vendee under such contract is constructive notice to subsequent purchasers of incumbrances.

In the case of *Graham v. Nesmith,* 24 S. C., 285, which arose under a written contract of sale, Chief Justice McIver says: 'It it well settled that possession is notice sufficient to put a party upon inquiry, and that is enough. *Massey v. McIlwain,* 2 Hill, Eq., 421. *Sheorn v. Robinson,* 22 S. C., 32. *Bieman [Biemann] v. White,* 23 [S. C.] Id., 490. Finding these plaintiffs in possession, his duty was to inquire of them by what right they claimed to hold the land, and such inquiry would have led to a notice of their equity which they are now seeking to set up."

In the case of *Sheorn v. Robinson,* referred to in the quotation above, the Court says: "In Jones on Mortgages, § 600, the doctrine on this subject is laid down in general terms as follows: 'Possession by a vendee under a contract of purchase, whether it be personal or by a tenant, is constructive notice of his equitable rights as purchaser, and any one taking a mortgage under such circumstances from his vendor takes subject to his rights.' It is not distinctly stated here whether the knowledge of the fact of possession must be brought home to the subsequent incumbrancer or purchaser, yet it is held that the possession is the foundation of the

notice, and therefore, like recording, must operate as constructive notice, whether actually known or not. * * * So, too, it is an easy matter for a purchaser of land to ascertain at the time of his purchase whether his vendor or some one else is in possession, and if he fail to do so, he should take the consequences. * * * Ihere are two kinds of notice, actual and constructive. Either is sufficient to prevent the plea of *bona fide* purchase without notice. * * * That is well understood, and such notice is not claimed here. The case turns on constructive notice. An illustration of constructive notice is found in the recording of deeds. As we have said, recording amounts to notice, whether known or unknown, because the means of information are at hand. We think this principle should apply where at the time of the sale the vendor is out of the possession and a third party is in. It is the business of one who buys land, or attempts to secure a lien on land, to know the surroundings. In justice to his own interests, and certainly in justice to the interests of a party who has contracted to buy in advance of his purchase, and who is notoriously in possession, claiming it and using it as his own, he should examine into and ascertain the facts. One in possession under an equitable title has nothing that he can record; and possession, open and unconcealed, is the only mode by which he can give notice to the world of his rights; and when this notice is given in the only way in which it could be given, he should be protected. We think, upon authority and principle, the *ruling* of the Circuit Judge was correct."

But plaintiffs contend that the cases cited (and others of the same purport) were decided prior to the enactment of the Act of 1888, which now constitutes Sections 5312 and 5313 of 3 S. C. Code, that the contract in this case is an "instrument of writing conveying real estate," required by Section 5312 to be recorded; and that, therefore, under Section 5313, possession by vendee is not notice of such instru-

ment; and that plaintiffs, being mortgagees without notice, take precedence of defendants.

Conceding that, in case of an unwritten contract of sale, the authorities quoted govern, and possession may be notice, they maintain that the statute law referred to renders such authorities inapplicable to a written contract.

No case, decided by our Court since the passage of the Recording Act, based on a written contract has been cited, but plaintiffs rely on an inference drawn from opinion by Mr. Justice Woods in the case of *Folk v. Brooks,* 91 S. C., 9; 74 S. E., 46, which was founded on an unwritten contract. In that case defendants claimed that a deed under which plaintiff's grantors had acquired title had been placed in his hands as security for a loan, and that at the expiration of one year, in case of default in payment, he was to have title. In that case Justice Woods uses the expression, "When the contract of purchase of land is not written, and therefore not an instrument of writing, required by law to be recorded, this Section (now Section 5313) has no application"; the inference being that, if the contract had been in writing, recording would have been necessary to bar subsequent claimants.

But the opinion does not hold the positive proposition that such written instrument is required to be recorded; and if it did so hold, such statement could be considered as only *obiter dictum.*

An exhaustive search has brought to light little in the way of direct authorities on the question as to whether a written contract is such an "instrument," etc., as the Recording Act requires to be recorded.

The question here is, "Is a written contract of sale an instrument in writing conveying real estate?" If it is, it should be recorded in order to charge subsequent purchasers or incumbrancers with notice. If it is not such an instrument, this case is governed by the rule stated in the cases cited

above, and possession is notice of the rights of the defendant Rogers.

The two Sections of the Recording Act referred to are in part as follows:

Section 5313 provides that "no possession of real property described in any instrument of writing required by law to be recorded shall operate as notice of such instrument," etc.

Section 5312 required the recording of "all deeds of trusts or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same."

The legal meaning of the word "conveying" must therefore be determined; but, as that participle is not separately defined, we must derive its meaning from the verb "convey" and the noun "conveyance," and these words are defined as follows:

Conveyance: "The meaning of this word being well understood at common law, it must be understood in the same sense when used in a Statute." 9 Cyc., 860, note 21— citing *Kelly v. Fleming,* 113 N. C., 133; 18 S. E., 81.

"At common law the term conveyance has been defined to mean an instrument in writing by which property or title to property is conveyed or transmitted from one person to another; a sale, or transfer," etc. 9 Cyc., 860.

Conveyance "is the transfer of the title to land by one or more persons to another or others." Bouvier's Law Dict.

Does a contract of sale transfer the property embraced from vendor to vendee? If so, it must, if an instrument in writing, be recorded in order to affect the interests of subsequent purchasers or mortgagees.

A vendee in possession, before deed, has an imperfect equitable interest in the land, but the maintenance of his rights depends on certain facts, to wit, payment of part or all of the price, and possession delivered by the vendor. His status is exactly the same, whether his contract be verbal or written. The advantage of the latter over the former is

32—S. C.—139

only that its terms are fixed, and do not depend, in case of dispute, on parol testimony.

In case of breach by vendor, the primary remedy of vendee is suit at law for damages. In certain cases the Court of equity will give him relief and compel the delivery of a deed by vendor.

"The equity to compel specific performance of a contract arises where a contract, binding at law, has been infringed and the remedy at law is inadequate." Adams, Eq., 77.

The granting of this relief is in the discretion of the Court, and one of the requisites to the exercise of this discretion is "that an enforcement in specie is necessary, i. e., it must be really important to the plaintiff, and not oppressive to the defendant." Adams, Eq., 82.

These statements emphasize the proposition that the primary right of vendee in case of breach of contract of sale is the legal one of suit for damages, and that such a contract does not convey any kind of estate in land, but only an "imperfect equity," the enforcement of which rests in the sound discretion of this Court.

If such contract conveyed an estate in land, its enforcement would be a matter of the application of the more rigid rules of law.

To the same purport is the article by Pomeroy, Jr., 26 Cyc., 548:

"Discretion of the Court. 1. General Rule. The jurisdiction of a Court of equity to decree the specific performance of contracts is not a matter of right in the parties to be demanded *ex debtie justiæ,* but applications invoking this power of the Court are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case. Specific performance is frequently refused, although the defense is not such as would warrant the rescission of the contract at the suit of the defendant."

He has no paper title, but an inchoate equitable claim depending on his possession and compliance with the terms of

payment of the purchase price—a claim which may never reach the point where he may demand conveyance. He relies on exactly the same state of facts in case of a written contract as in that of parol contract. There can be no reasonable ground for giving him the benefit of the doctrine of possesion being notice, in one case and denying it in the other, except the terms of the recording Act.

Under the established legal meaning of the words "conveyance" and "convey," a written contract of sale is not an instrument conveying an estate in land.

Vendee, with recorded deed, though not in possession, maintains action for possession by proving deed. Vendee, in possession, under contract of sale, asserts his right by providing his right to require the delivery of a deed. He must prove terms of contract—verbal contract by parol, written contract by proof of instrument. Written contract is little more than receipt for purchase price or part thereof. In either case, possession is necessary to affect rights of subsequent purchasers or mortgagees. It is notice, not of an instrument conveying land, but of a right in equity to acquire such an instrument.

In the case of *Cochran v. Adler et al.,* 121 Ala., 442; 25 So., 761, the Court says: "The bond for title, and the writings assigning it, coveying no estate, either legal or equitable, were not required to be recorded, under our registration statutes, providing protection to creditors and purchasers against dormant conveyances and loans. They were not conveyances of an unconditional estate in the lot, nor were they mortgages or instruments in the nature of a mortgage. Code 1896, § 1005, et seq.; *Brown v. Chambers,* 2 Ala., 697."

I find as matter of fact that defendant has been in open, notorious, adverse possession of the land in question continuously since a time long antedating the plaintiff's mortgage.

I find as a matter of law that the contract in question in this case is not such an instrument of writing as is required

by law to be recorded, in order to charge subsequent grantees or incumbrancers with notice; that the possession of the defendant Rogers was sufficient notice of her equitable claim; and that therefore the plaintiff's mortgage is a lien as against the defendant Rogers only on the amount remaining unpaid on the contract price, which I find to be $181, with interest from the 1st of February, 1924, and insurance premiums or taxes since paid, if any.

As to the mortgagor, the McCallum Realty Company, it is bankrupt, and judgment against it would be useless. Nevertheless, I find that the amount now due on plaintiff's bond and mortgage is $868.98, with 10 per cent. attorney's commissions, making a total of $955.88.

### EXCEPTIONS TO MASTER'S REPORT

To Messrs. Purdy and Ramsey, Attorneys for the Defendant Lizzie Rogers:

You will please take notice that the plaintiffs except to the master's report in the particulars below set forth, and will ask the trial Judge, when the cause comes up for hearing, for a reversal or modification on said grounds:

I. His Honor erred, it is respectfully submitted, in holding that the defendant Lizzie Rogers was in open, adverse, and notorious possession of the premises described in the complaint; whereas he should have found that the said defendant is not in any adverse possession whatsoever, but merely holding under the terms and by virtue of a written contract.

II. His Honor erred, it is respectfully submitted, in holding as a matter of law that the contract in question is not such an instrument in writing as is required by law to be recorded; whereas his Honor should have held that the said contract is such an instrument of writing as is required by law to be recorded.

III. His Honor erred, it is respectfully submitted, in holding that the possession of the defendant Lizzie Rogers was sufficient notice to the plaintiffs of her equitable claim;

whereas his Honor should have held that, the contract being in writing, her possession was no notice to the plaintiffs.

IV. His Honor erred, it is respectfully submitted, in holding that the mortgage of the plaintiff is a lien only on the amount of the purchase price unpaid; whereas he should have preserved the mortgage inviolate, and he should have found the plaintiffs entitled to a decree for foreclosure as to the entire amount of the mortgage indebtedness.

V. His Honor should have held that the contract in question was a deed of trust, or instrument in writing charging or incumbering real estate, and therefore was such instrument as is required by law to be recorded.

### DECREE

This case comes up to be heard before me on exceptions by the plaintiffs to the master's report.

Counsel on both sides made elaborate arguments, and I reserved my decision, which I now render.

The report of the master shows very clearly that he gave the matter careful and painstaking study, and the authorities he cites seem to sustain his conclusions.

After careful consideration of the matter, I think his construction and interpretation of the law of the case is correct; and, for the reasons stated in his report, it is ordered: That the exceptions be, and they are hereby, overruled and that the report of the master be, and the same hereby is, affirmed and made the judgment of this Court.

It is further ordered and adjudged that the said Lizzie Rogers do pay to the master the sum of $181, with interest from February 1, 1924, up to time of such payment, and, in addition thereto, the sum of $8.10 for insurance and taxes, with interest from the 1st day of January, 1924, and that she make such payments on or before the 1st day of October, 1926, and upon such payment the master do execute and deliver to her a conveyance in fee of said lot of land described in the compaint, free from incumbrances of the mortgage in

question, and the money so paid shall be paid to the plaintiffs or their attorneys, after first paying the costs and disbursements of this action.

And it is further ordered that, if such payments be made by her, the said Lizzie Rogers shall not pay any costs or disbursements of the action nor any costs or disbursements on account of making conveyance to her; and, after such payments are made by the said Lizzie Rogers, then all persons whomsoever shall be forever barred from any right, title, or interest in the premises, except the said Lizzie Rogers; should she fail to make the payments by the time aforesaid, then the land described in the complaint shall be sold by the master for cash under the direction of the plaintiff's attorneys, on some salesday to be named by them; and out of the proceeds of the sale the master shall pay all costs and disbursements accruing after the failure of the said Lizzie Rogers to make such payments, and he shall then pay the plaintiffs the sums of money hereinafter adjudged to be paid by the said Lizzie Rogers, and shall pay the balance to the said Lizzie Rogers or her attorneys; and from and after such sale she and those claiming under her shall be forever barred of all right, title, and interest at law and equity in and to said lot of land. The master shall make title to the purchaser, who shall be let into possession of the premises on production of the master's deed, and any party to the action may become a purchaser at such sale.

## Exceptions

I. The master erred, it is respectfully submitted, in finding that the defendant Lizzie Rogers was in open, adverse, and notorious possession the premises described in the complaint; whereas he should have found that the said defendant is not in any adverse possession whatsoever, but merely holding under the terms and by virtue of a written contract, and his Honor erred, it is respectfully submitted, in not sustaining this exception to the master's report.

II. The master erred, it is respectfully submitted, in holding as a matter of law that the contract in question is not such an instrument in writing as is required by law to be recorded; whereas the master should have held that the said contract is such an instrument in writing as is required by law to be recorded, and his Honor the trial Judge erred, it is respectfully submitted, in not sustaining this exception.

III. The master erred, it is respectfully submitted, in holding that the possession of the defendant Lizzie Rogers was sufficient notice to the plaintiff of her equitable claim; whereas his Honor should have held that, the contract being in writing, her possession was no notice to the plaintiffs, and his Honor, the trial Judge, should have sustained this exception.

IV. The master erred, it is respectfully submitted, in holding that the mortgage of the plaintiffs is a lien only on the amount of the purchase price unpaid; whereas he should have preserved the mortgage inviolate and he should have found the plaintiffs entitled to a decree for foreclosure as to the entire amount of the mortgage indebtednes, and his Honor the trial Judge should have sustained this exception to the master's report.

V. The master should have held that the contract in question was a deed of trust or instrument in writing charging or incumbering real estate, and therefore was such instrument as is required by law to be recorded, and his Honor the trial Judge should have sustained this exception to the master's report.

VI. His Honor, the trial Judge, should either have held that the contract was such an instrument in writing charging real estate as should be recorded to give notice of possession thereunder, or else he should have held that the mortgage held by the plaintiffs was a lien upon the premises prior to any equity that the defendant Lizzie Rogers had therein. In other words, the written contract either charged the real estate, and therefore should be recorded, or else it did not

charge the real estate, and could not come in ahead of the mortgage lien of the plaintiffs.

VII. His Honor erred, it is respectfully submitted, in giving judgment only for the unpaid portion of the purchase price still owing by Lizzie Rogers; whereas his Honor should have given judgment for foreclosure of the mortgage, and directed that the proceeds of sale be applied to the mortgage debt.

VIII. His Honor erred, it is respectfully submitted, in finding that the said Lizzie Rogers should not pay any costs or disbursements; whereas his Honor should have required her to pay the costs and disbursements of this action.

*Messrs. Epps & Levy,* for appellants, cite: *Excutory contract for sale of real estate should be recorded:* Sec. 5313, Vol. 3, Code; 98 S. C., 463; 91 S. C., 7; 129 S. C., 531; 3 Watts & L. (Pa.), 334; 115 Me., 495; 58 Wash., 191. *"Hereditaments":* 32 Cyc., 659; 45 S. C. L., 54; 33 S. C. Eq., 343; 93 S. C., 229.

*Messrs. Purdy & Ramsey,* for respondent Lizzie Rogers, cite: *Prior to enactment of recording act possession sufficient notice of one's right to put a party upon inquiry:* 24 S. C., 295; 2 Hill. Ch., 421; 22 S. C., 32; 27 Cyc., 1187; 13 L. R. A. (N. S.), 103. *Sec. 5313 Code not applicable when party in possession claims equitable title:* 112 S. C., 555; 39 Cyc., 1732. *"Conveyance":* 18 S. E., 81; 9 Cyc., 860; 39 Cyc., 1230. *Specific performance of contract in equity:* Adam's Eq., 77, 82 26 Cyc., 548. *Contract of sale of land not conveyance:* 25 So., 662. *"Charge": Words and Phrases "Incumbrance":* 52 Me., 180; *Words and Phrases. Possession is notice to subsequent mortgagees:* 99 Am. Dec., 631; 77 N. E., 216; 27 Cyc., 1189, Sec. 2; 1 N. E., 523; 21 N. W., 331; 13 L. R. A. (N. S.), 105. *Award of costs discretionary with Judge:* Sec. 623, Code Civ. Proc., 1922; 84 S. C., 461. *Cases distinguished:* 129 S. C., 531; 93 S. C., 229.

May 19, 1927.

The opinion of the Court was delivered by Mr. Justice Blease.

This is an action for foreclosure of a mortgage on a lot of land situated in the City of Sumter. The circumstances giving rise to the action and the issues therein are as follows:

On November 5, 1917, McCallum Realty Company, a corporation, the owner of said lot, on which was a small dwelling house, entered into a written contract with the defendant, Lizzie Rogers, a colored woman, whereby it contracted to sell, and she to purchase, the said lot upon the terms therein stated. The contract was not recorded. Pursuant to the contract, Lizzie Rogers went into possession of the lot in the early part of 1918, and she and her children have since been in possession. On March 25, 1921, McCallum Realty Company mortgaged said lot to the Woodmen of the World to secure a loan that day made; the Woodmen of the World having no actual notice of the aforesaid contract. Thereafter the mortgage was assigned to plaintiffs as trustees for certain members of Hollywood Camp No. 19, Woodmen of the World, who commenced this action on September 20, 1924. Notice having been previously given that Lizzie Rogers claimed some interest in the lot, she was made a party defendant. The McCallum Realty Company having been adjudged bankrupt, W. L. Marshall, trustee of said bankrupt, was also made a party defendant. All defendants defaulted, except Lizzie Rogers, who answered, setting up her contract, and claiming that she was entitled to the premises for the reason that her rights were superior to those of plaintiffs. The case was referred to the master for Sumter County, who filed his report, sustaining her contention. The plaintiffs excepted to the master's report, and the case was heard before his Honor, Judge John S. Wilson, who filed his decree, overruling the exceptions and confirming said report. From this decree and the judgment thereon plaintiffs duly appealed to

this Court.   Let the master's report, the decree of Judge Wilson, and the exceptions thereto be reported.

The exceptions will not be taken up *seriatim,* but the ques tions they raise will be considered.   The main question presented thereby for our determination is : Was the executory contract entered into between McCallum Realty Company and Lizzie Rogers such a written instrument as is required by Section 5312, 3 Code 1922, to be recorded ?   Appellants contend that it is such an instrument, while respondent contends that it is not.   If it be not such an instrument, then respondent further contends that possession by her of the lot described in the contract operated as constructive notice of said contract.   It is to the determination of this question that we first direct our attention.

At common law deeds of conveyance and other instruments affecting real estate were not required to be recorded.   The rule then obtaining was as follows:

"At common law, the title of a purchaser ordinarily depends, first upon the title of his vendor ; second, upon whether the vendor has transferred his title to the purchaser. If the vendor had no title, or if his title was defective, it was not material that the purchaser paid the full value of the property, and supposed he was acquiring a perfect title." Tiffany, Real Property (2d Ed.), § 2169, and authorities cited.

Under the rule stated, the first purchaser to acquire the legal title prevailed.   A subsequent purchaser from the same vendor, though paying the full value of the property, and thinking he was acquiring a good title, acquired no title under such second conveyance, for the reason that the vendor, having parted with his title, had nothing which he could convey.

The common-law rule has been changed by the recording acts in this and other states by requiring that, if the instrument under which rights are claimed be not recorded within a specified time, a subsequent creditor, or purchaser for value without actual notice, will not be affected thereby.

As early as 1698 (2 St. at Large, p. 137), and from time to time thereafter, acts were passed in this state requiring certain instruments therein named to be recorded within the times and at the places therein provided, and providing that, if not so recorded, subsequent conveyances, incumbrances, etc., should be held and deemed valid as against such unrecorded instruments. In 1876 the General Assembly passed an Act (16 St. at Large, p. 92), entitled, "An Act to provide an uniform registry law for all deeds and other instruments in writing required to be recorded." This Act, with certain minor changes with which we are not here concerned, is now incorporated as Section 5312, 3 Code 1922. So much thereof as here needs be considered is as follows:

"All deeds of conveyances of land, tenements or hereditaments, either in fee simple or for life, all deeds of trust or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same; all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal; * * * shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) of purchasers for valuable consideration without notice, only when recorded within ten days [forty days in the original act] from the time of such delivery or execution in the office of mesne conveyance or clerk of court of the county where the property affected is situated, in the case of real estate.' (Note:—The amendments of 1925 [34 St. at Large, p. 85] are not here involved.)

As between the parties thereto, it is not necessary to the validity of any instrument contemplated by said Act that it be recorded. Recording becomes material only when there are double conveyances, etc., by the same person. *Martin v. Quattlebam,* 3 McCord, 205. *Summers v. Brice,* 36 S. C., 204; 15 S. E., 374. *Smyly v. Colleton Cypress Co.,* 95 S. C., 351; 78 S. E., 1026.

While intending to protect subsequent creditors and purchasers for value without notice, it is manifest that the recording acts invest the grantor or incumbrancer with power to defeat a previous conveyance or incumbrance, if not recorded as provided, by a subsequent conveyance or incumbrance to one who has no actual notice of such previous conveyance or incumbrance. The holder of such previous conveyance or incumbrance, by complying with the recording acts, may wholly disarm the grantor or incumbrancer of such power, and thereby protect himself.

There are two kinds of notice, actual and constructive, that will prevent the plea of *bona fide* purchaser for value without notice. The recordation of instruments contemplated by Section 5312, within the time and at the place required thereby and by amendments thereto, will operate as constructive notice of such instruments, so as to effect from the delivery or execution thereof the rights of subsequent creditors or purchasers for valuable consideration without actual notice thereof. And, conversely, the recordation of instruments not contemplated by said Section will not operate as constructive notice of such instruments so as to affect the rights of subsequent creditors or purchasers for valuable consideration without actual notice, and therefore cannot take the place of actual notice. So much is clear. We proceed then to inquire whether or not possession will operate as constructive notice, and thus take the place of recordation.

The purpose of the recording Act was to protect subsequent creditors and purchasers for value without notice.

In *Sheorn v. Robinson,* 22 S. C., 32, cited by respondent, decided by this Court in 1884, the question before the Court was, not whether an executory contract for the sale of land was such an instrument as the Act of 1876 required to be recorded so as to give constructive notice, but whether possession under such an unrecorded instrument would operate

as constructive notice to a subsequent mortgagee, who had no actual notice of such possession. The Circuit Judge decided the question in the affirmative, and on appeal to this Court the decree was affirmed. Mr. Chief Justice Simpson, speaking for the majority of the Court, said:

"The ruling of the Circuit Judge in its full meaning is that possession of land by a vendee under a contract of purchase operates as notice to a subsequent purchaser or incumbrancer, although such possession as matter of fact is unknown to such subsequent purchaser at the time of said purchase. The possession in such case stands in the place of a record of the deed where the vendee had purchased with a conveyance regularly executed and delivered, and as the record of a prior deed is notice, whether it is actually known or not, so possession, whether known or not, is also sufficient notice."

"The ground upon which the recording of a deed operates as notice, whether the fact of record be known or not, is that it is always in the power of the subsequent purchaser, by searching the records, to ascertain whether or not there has been a previous conveyance; and if he fails to make the necessary examination, it is his own fault, and his rights must be determined by the facts of the record within his reach on the subject. So, too, it is an easy matter for a purchaser of land to ascertain at the time of his purchase whether his vendor or some one else is in possession, and if he fails to do so, he should take the consequences. * * * There are two kinds of notice, actual and constructive. Either is sufficient to prevent the plea of *bona fide* purchase without notice. It is not necessary to discuss actual notice. That is well understood, and such notice is not claimed here. The case turns on constructive notice. An illustration of constructive notice is found in the recording of deeds. As we have said, recording amounts to notice, whether known or unknown, because the means of information are at hand. We think this principle should apply where at the time of the sale the

vendor is out of the possession and a third party is in.   It is the business of one who buys land, or attempts to secure a lien on land, to know the surroundings.   In justice to his own interests, and certainly in justice to the interests of a party who has contracted to buy in advance of his purchase, and who is notoriously in possession, claiming it and using it as his own, he should. examine into and ascertain the facts. One in possession under an equitable title has nothing that he can record; and possession, open and unconcealed, is the only mode by which he can give notice to the world of his rights; and when this notice is given in the only way in which it could be given, he should be protected.   We think, upon authority and principle, the ruling of the Circuit Judge was correct."

The doctrine laid down in *Sheorn v. Robinson* was confirmed in *Biemann v. White,* 23 S. C., 490; *Graham v. Nesmith,* 24 S. C., 285; *Sweatman v. Edmunds,* 28 S. C., 58; 5 S. E., 165; and *Daniel v. Hester,* 29 S. C., 147; 7 S. E., 65.   The case last cited was heard at the April term, 1888. Thus the law stood when the General Assembly passed the Act of 1888, approved December 24, 1888 (20 St. at Large, p. 15), now incorporated as Section 5313, 3 Code 1922, which is as follows:

"No possession of real property described in any instrument of writing required by law to be recorded shall operate as notice of such instrument; and actual notice shall be deemed and held sufficient to supply the place of registration only when such notice is of the instrument itself or of its nature and purport."

In the case of *Foster v. Bailey,* 82 S. C., 378; 64 S. E., 423, Mr. Justice Jones, later Chief Justice, speaking for the Court, said:

"This Statute, approved December 24, 1888, changed the rule declared in *Sheorn v. Robinson,* 22 S. C., 32; *Daniel v. Hester,* 29 S. C., 147; 7 S. E., 65, and like cases that possession is notice of an unrecorded deed."

It is manifest, therefore, that, if the contract between Mc-Callum Realty Company and Lizzie Rogers was such an instrument as Section 5312 required to be recorded, possession by her was not notice to the mortgagee.

"A written contract for the sale of land, of which specific performance would be decreed, is ordinarily regarded as within the recording acts, sometimes by reason of its express mention." Tiffany, Real Property (2d Ed.), p. 2183, citing authorities from many states, among which is *Kirven v. Wilds,* 98 S. C., 463; 82 S. E., 673.

The case of *Kirven v. Wilds, supra,* was an action for foreclosure of two mortgages on certain real estate. The facts were: On January 3, 1903, Ralph Wilds and Robert Wilds bought of A. Nachman 80 acres of land, and gave him a mortgage thereon to secure the unpaid purchase money. Nachman assigned the mortgage to Hennig. On December 31, 1910, Elliott Wilds, Dave Wilds, and James Wilds paid Hennig $50 on said mortgage, and agreed to pay $425.42 on it, within twelve months, with interest at 8 per cent., and, in consideration thereof, Ralph Wilds agreed, "If said amount is paid by said parties within said time," to convey to them 40 acres of land, "at that half of my land on which the house is located. This one-half of the tract conveyed to me by A. Nachman." This agreement was duly recorded. Thereafter Hennig assigned the mortgage to plaintiff. On January 2, 1912, Ralph Wilds gave plaintiff another mortgage of his undivided interest in said land to secure the payment of $789. The Circuit Court decreed foreclosure on both mortgages, from which the defendants Elliott Wilds, Dave Wilds, and James Wilds appealed to this Court. In delivering the opinion of the Court, Mr. Justice Hydrick said:

"But the Circuit Court was in error in holding that the defendants Elliott, David and James, had no right, under their agreement with Ralph, which the Court should protect. By virtue of that agreement, they are entitled to specific performance on the part of Ralph. Moreover, the plaintiff's

mortgage of January 2, 1912, was taken after that agreement was made and recorded, and is, therefore, subject to it, that is, as to that mortgage, the defendants, Elliott, David and James, have priority in the portion of the land."

There is nothing in that case to show that the plaintiff had actual notice of the agreement between Ralph and the defendants Elliott, David, and James. If he had notice thereof, then he must have obtained notice by virtue of its record. Although not expressly decided, it was thus assumed that the executory contract of sale was such an instrument as Section 5312 required to be recorded, otherwise its recordation could not have operated to give notice, since the record of a paper not required to be recorded will not operate as constructive notice. *Bossard v. White,* 9 Rich. Eq. (30 S. C. Eq.), 483. *Villard v. Robert,* 1 Strob. Eq. (20 S. C. Eq.), 393. *Harper v. Barsh,* 10 Rich. Eq. (31 S. C. Eq.), 149. *Williams v. Paysinger,* 15 S. C., 171. *Woolfolk v. Mfg. Co.,* 22 S. C., 332. *Wood v. Reeves,* 23 S. C., 382. *Arthur v. Screven,* 39 S. C., 80; 17 S. E., 460. *Singleton v. Singleton,* 60 S. C., 216; 38 S. E., 462. *Watts v. Whetstone,* 79 S. C., 357; 60 S. E., 703.

In *Doscher v. Merritt,* 129 S. C., 531; 125 S. E., 33, the facts were: Merritt entered into an agreement with Mercer, by which the former agreed to sell to the latter a lot of land in Charleston, for an agreed consideration, which the latter was to pay in installments. (The date of this agreement is given in the South Carolina Reporter as March 2, 1922, which is manifestly erroneous. The date is given in the South Eastern Report as 1912, and we think this date is correct.) Mercer paid almost all, if not all, the agreed purchase price, and built a house on the lot. On October 31, 1917, Merritt executed and delivered a mortgage covering said house and lot to Matilda Doscher, executrix of the estate of A. F. Doscher. Upon the death of said Matilda Doscher, Freda C. Doscher was appointed administratrix c. t. a. of said Doscher estate, and on January 20, 1923, com-

menced action to foreclose said mortgage, making Merritt the mortgagor, the sole defendant. The foreclosure action resulted in an order of sale, which sale was duly had; Merritt became the purchaser, but failed to comply with his bid. Before another sale could be had, Mercer applied to a Circuit Judge for an order allowing him to intervene. No notice was given to Freda C. Doscher of the application. The Circuit Judge passed an order June 5, 1923, allowing the intervention, providing that Mercer be made a party defendant, and enjoining the resale of the property until Mercer's rights could be determined by the Court. Thereafter Freda C. Doscher made a motion before the same Circuit Judge to vacate the order of June 5, 1923. After hearing counsel upon this motion, the Judge, on June 13, 1923, passed an order granting the motion. From that order Mercer appealed to this Court. The question before this Court in that appeal was whether the Circuit Judge wisely exercised, or whether he abused, his discretion. After deciding that the mortgagee had no actual notice of Mercer's claim, it was determined that the Circuit Judge wisely exercised his discretion. This decision necessarily implied that the possession by Mercer, known or unknown to the mortgagee, was not notice, for the reason that the agreement under which he claimed was such as was required by Section 5312 to be recorded.

Respondent relies on *Oliver v. McWhirter,* 112 S. C., 555; 100 S. E., 533, as "a case decided since the passage of the recording Act (meaning the Act of 1888), which affirms the doctrine that possession is notice of an equitable right in land." We think that an examination of that case will show that it is not authority for the proposition for which it is cited. The decree of the lower Court was reversed upon the concurrence of Mr. Justice Gage in the opinion of Mr. Chief Justice Gary, holding that Pitchford had either actual notice of the deed under which the children of B. F. Pennington claimed, or of sufficient facts as to give him notice of its nature and purport. But Mr. Justice Gage specifically an-

nounced that the third "postulate" of the Chief Justice, to wit, that the Act of 1888 was "not applicable when the party in possession claims under an equitable title," was not relevant. It is thus seen that said "postulate" was not affirmed by a majority of the Court, since Mr. Justice Hydrick dissented, and Mr. Justice Fraser concurred in the dissenting opinion.

In respondent's brief we find the following:

"Appellants admit, however, that in case of an unwritten contract of sale the authorities cited from our state govern, and possession may be notice, but they contend that the statute law referred to (that is, the Act of 1888), renders such authorities inapplicable to a written contract."

We do not apprehend that the law makes any such distinction between a written and unwritten executory agreement for the sale of land, nor do we understand that counsel for appellants seek to draw such a distinction. Their citation of the language of Mr. Justice Woods in *Folk v. Brooks,* 91 S. C., 7; 74 S. E., 46, was to show that that eminent jurist regarded a written contract for the sale of land as such an instrument as Section 5312 requires to be recorded rather than for the purpose of using it as authority for the proposition that, if such a contract be reduced to writing, possession thereunder will not be notice under Section 5312, yet, if it be not reduced to writing, such possession will be notice. It is manifest that Justice Woods was clearly of the opinion that a written executory contract for the sale of land was such an instrument as Section 5312 requires to be recorded, yet we must regard so much of the language there employed as states that possession is notice under a parol contract, but not notice under a contract in writing, as unfortunate and wholly *obiter dicta.*

The statute of frauds requires that an executory contract for the sale of land, or any interest therein, be in writing and signed by the vendor, or his agent thereunto lawfully authorized by writing. Under a parol

contract for the sale of land, one may, by such part performance as will take the case out of the Statute of Frauds, be entitled to specific performance as between himself and his vendor. But if, after such parol agreement is entered into, the vendor conveys or mortgages the land covered by such parol agreement to a third party who has no actual notice of such parol agreement, possession by the vendee under such oral agreement would not operate as constructive notice so as to preclude the grantee or mortgagee from claiming the protection of the plea of purchaser for valuable consideration without notice. Section 5312 must be construed in connection with Section 5515. An enforceable agreement is required by Section 5515 to be in writing. Section 5312 could relate to enforceable agreements only.

The master based his conclusions of law "that the contract in question in this case is not such an instrument of writing as is required by law to be recorded, in order to charge subsequent grantees or encumbrancers with notice," upon the premise that "a written contract of sale" is not a conveyance, which is defined in Bouvier's Law Dictionary as "the transfer of the title to land by one or more persons to another or others." Reference to the Statute will show that it is not confined to deeds of conveyance. The Statute specifically enumerates: (1) Deeds of conveyances, in fee simple or for life; (2) deeds of trust; (3) instruments in writing, conveying either real or personal estate, and (a) creating a trust or trusts in regard to such property, (b) or charging, (c) or incumbering the same; (4) (a) mortgages, (b) or instruments in writing in the nature of a mortgage, of any property, real or personal.

It is manifest that the Statute contemplated an instrument which conveyed real estate, and yet which was not a deed of conveyance; which created a trust or trusts, and yet was not a deed of trust; which charged or incumbered the same, and yet was not a mortgage, or an instrument in the nature of a mortgage.

Such an instrument we conceive an executory contract for the sale of land to be. It most assuredly conveys, or transfers, an interest in real estate which may be mortgaged by the vendee (*Whitmire v. Boyd,* 53 S. C., 315; 31 S. E., 306). *Roddy v. Elam,* 12 Rich. Eq. (33 S. C. Eq.), 343; which is devisable and descendible (*Landrum v. Hatcher,* 11 Rich., 54; 70 Am. Dec., 237) ; and which may be assigned, or become subject to a mechanic's lien (*Ridgeway v. Broadway,* 91 S. C., 544; 75 S. E., 132).

In 39 Cyc., 147, we find this language:

"Where a valid contract for the sale and purchase of land is entered into, and the relation of vendor and purchaser is constituted, the vendor, before conveyance, becomes a resulting trustee for the purchaser, particularly after the latter has paid the purchase price, or a part thereof, and given binding obligation for the balance."

In *Landrum v. Hatcher, supra,* the Court, citing Story, Eq. Jur., 1212, states the rules thus:

"Where a contract is made for the sale of land, the vendor is in equity immediately deemed a trustee for the vendee of the real estate, and the vendee is deemed a trustee for the vendor of the purchase money. Under such circumstances, the vendee is treated as the owner of the land and it is devisable and descendible as his real estate."

See, also, *Roddy v. Elam,* 12 Rich. Eq., (33 S. C. Eq.), 343.

The foregoing authorities show that Lizzie Rogers was the equitable owner of the land described in the written contract entered into by her and McCallum Realty Company. That equitable interest was transferred to her under the said contract. The contract created a trust in regard to such land. As between her and McCallum Realty Company, she was entitled to specific performance. Her contract not being recorded, McCallum Realty Company had the power, by force of Section 5312, to defeat her rights in and to said lot, unless

said Section was not applicable, for the reason that such contract was not by said Section required to be recorded.

In our investigation of the questions involved in this cause, we have found one case, not cited by either the appellants or the respondent, which seems to our minds to bear strongly upon the main question involved here, and perhaps is absolutely conclusive thereon. We refer to *Blackwell v. Mortgage Company,* 65 S. C., 105; 43 S. E., 395. In that case, Josephine Blackwell conveyed her one-half interest in a certain tract of land to L. T. Harmon for the purpose of obtaining a loan from the defendant mortgage company and securing the payment thereof to said company by a mortgage on said land. At the time said deed was executed, the said L. T. Harmon and Josephine Blackwell executed a written instrument, reciting said deed, and providing as follows:

"Now, it is understood and agreed by Josephine Blackwell and L. T. Harmon that, when the said Josephine Blackwell shall pay or cause to be paid to L. T. Harmon or his legal heirs or representatives one-third (1/3) of the amount borrowed, then the said L. T. Harmon hereby binds his heirs, executors and administrators to convey unto Josephine Blackwell the above-described one-half interest in said land."

This agreement was not recorded, but an exact copy thereof, signed by the original parties, and witnessed by the original witnesses, and duly probated, was recorded, and referred to in the case as Exhibit K. Thereafter L. T. Harmon conveyed his original one-half interest in said tract of land to his wife, Mollie Harmon, and later he and his said wife conveyed the land to the mortgage company in liquidation of the mortgage debt. The mortgage company gave the Twin City Power Company an option to purchase said land, which company had no actual notice of the agreement between L. T. Harmon and Josephine Blackwell. The action was for the purpose of having the deed from Mrs. Blackwell to L. T. Harmon declared a mortgage. After deciding that actual notice of such agreement to the attorney who procured

the loan (he being held to be the agent of both the borrower and lender) was notice to the mortgage company, Mr. Justice Gary said:

"There is another reason why it must be construed that the Twin City Power Company, as well as the British & American Mortgage Company, had notice of the agreement between Harmon and Mrs. Blackwell. * * * 'Exhibit K' is such a writing as is contemplated in the recording acts, and although not recorded within the time required by law, nevertheless, from the date of its record, it operated as notice to those subsequently thereto becoming purchasers of the property therein described."

Had Lizzie Rogers paid the entire purchase money and received a deed of conveyance in fee simple, instead of the contract of sale, and failed to have the same recorded, possession under such unrecorded deed would not have been notice to the mortgagee herein. *Foster v. Bailey,* 82 S. C., 378; 64 S. E., 423. Is she entitled to greater protection when she did not get a deed, but merely acquired the right to demand a deed upon her compliance with the terms of the contract? We think not.

Respondent contends that, since the Legislature, in 1925 (34 St. at Large, p. 85; § 2), amended Section 5312 by expressly including "contracts for the purchase and sale of real property," such contracts were not, prior to such amendment, comprehended by said Section. When it is remembered that this case arose in 1924, at which time the question was raised whether or not such a contract was embraced in Section 5312, it is more reasonable to suppose that the Legislature merely sought, by said amendment, to make certain and clear what the bench and bar had for almost half a century understood the law to be. Be that as it may, it is not the function of the legislative branch of the government to place the final construction upon a statute. It is the opinion of this Court that an executory contract for the sale of real estate is, independent of the amendment

of 1925, such an instrument as Section 5312 required to be recorded.

We further conclude that, if any instrument contemplated by Section 5312 be not recorded as required therein and by amendment thereto, possession of real estate described in such an unrecorded paper will not operate as constructive notice so as to affect the rights of subsequent creditors or purchasers for valuable consideration without actual notice. Such is the express language of Section 5313 of the 1922 Code. An executory contract for the purchase and sale of land, or of any interest therein, being within the contemplation of Section 5312, must be recorded as in said Section provided, and, if not so recorded, possession will not operate as constructive notice thereof.

For the foregoing reasons, exceptions 2, 3, 5, and 6 are sustained.

"It is a familiar doctrine that one who goes into possession of land under a contract to purchase it, and has not paid the whole of the purchase money, cannot acquire title against the vendor by the Statute of Limitations." *Blackwell v. Ryan,* 21 S. C., 112. *Richards v. McKie,* Harp. Eq. (5 S. C. Eq.), 184. *Secrest v. McKenna,* 6 Rich. Eq. (27 S. C. Eq.), 72. *Geogorie v. Bulow,* Rich. Eq. Cas. (9 S. C. Eq.), 235. *Watts v. Witt,* 39 S. C., 369; 17 S. E., 822. *Poston v. Ingraham,* 76 S. C., 167; 56 S. E., 780. There is no pretense here that Lizzie had paid the whole of the purchase money, and therefore there could be no adverse holding by her as against the McCallum Realty Company. Nor is there any evidence of any kind of possession, adverse or otherwise, prior to the first of the year 1918. Exception 1 is therefore sustained.

It follows that the lien of plaintiffs' mortgage is the first and prior lien on said lot, and that they are entitled to a decree for foreclosure as to the entire amount due on said mortgage indebtedness. Exceptions 4 and 7 are sustained.

Even if Lizzie Rogers has no superior right to the plaintiffs in the premises, and even if she did not make any claim thereto, it was necessary anyway, for the plaintiffs to institute their suit for foreclosure. For these reasons, we do not think she should be required to pay all the costs of this action. In our judgment each side should pay its own costs; therefore the eighth exception is overruled.

We regret the hardship to this old negro woman who has labored for years to secure a little home for herself and her children, but we see no way to avoid it without working a hardship upon an innocent mortgagee. The mortgagee herein had a right to rely, and did rely, upon the records of Sumter County for information as to the title to this lot. Those records disclosed that McCallum Realty Company owned the legal title thereto, and failed to disclose that Lizzie owned any interest in or right to the same. Had she complied with the recording Statute, she would have been protected. She had the power to protect herself, and failed to exercise the same. By not doing so, she made it possible for McCallum Realty Company to defeat her rights, and induced an innocent, unsuspecting third party to lend money on the lot, believing it to be unincumbered. That McCallum Realty Company perpetrated a wrong there can be no doubt, but this Court has recently held that, where one of two innocent parties must suffer, it must be he who has placed it within the power of the malefactor to perpetrate the wrong. *Davis v. Bland,* 138 S. C., 354; 136 S. E., 300.

To adopt the view contended for by appellant, and expressed by Mr. Justice Cothran in his dissenting opinion, would be to make it incumbent upon the prospective grantee or mortgagee to not only examine the records in the clerk of court's office, but to ascertain the character of the possession of any and every one who happened to be in possession of the property, or any part thereof, intended to be conveyed or mortgaged. Such a rule would not only be harsh and exacting upon the grantee or mortgagee, but might operate to

embarrass the owner of such property. It is easy to imagine an instance where the owner desired to sell the land, and the tenant, being unwilling for him to make the sale, could represent to the intending purchaser that he was in possession under a contract to purchase. If such a claim was asserted by the one in possession, the prospective purchaser or mortgagee would have no way to determine whether or not such a claim was well founded. The owner might deny it to be true, but, if insisted upon by the tenant, only a Court could judicially determine the question. Rather than "buy a lawsuit," the intending purchaser or mortgagee would refuse to treat with the owner thereabout.

There is nothing in the record showing, or in the remotest degree suggesting, that the mortgage of plaintiffs covers any land other than the lot in question, or that plaintiffs have any other security for their debt. If there was anything of that kind on which the respondent could base a claim for application of the "two-fund" doctrine, we must assume that her attorneys would have so alleged. Hence the suggestion that the case should be left open for a determination of any such question does not seem to us to bear merit.

The judgment of this Court is that the decree of the lower Court be reversed, and that the cause be remanded to that Court for the purpose of carrying into effect the views herein expressed.

Mr. Chief Justice Watts and Mr. Justice Stabler and Mr. Acting Associate Justice Ramage concur.

Mr. Justice Cothran (dissenting) : The sole question in this case is whether a written contract for the sale and purchase of real estate comes within any of the classes of instruments of writing described in Section 512 (Civ. Code 1922). The only class that it could possibly come within is :

"Deeds of trusts or instruments in writing, conveying either real or personal estate, and creating a trust or trusts in regard to such property, or charging or incumbering the same."

It is certainly not a deed at all, and therefore as certainly not a deed of trust; it is as certainly not an instrument in writing conveying real estate; and, although it may be considered as creating a constructive trust, technically, in the vendor for the benefit of the vendee and vice versa, under the Act it must not only have that express effect, but must be a conveyance of real estate, for the Act describes a paper which does both.

I am inclined to this strict construction of the Act of 1888 (now Civ. Code 1922, § 5313), for several reasons: The rule which generally obtained before that Act was passed, as explained in the case of *Sheorn v. Robinson,* 22 S. C., 32, appears to be so just and reasonable, enforced for centuries, that it should not be abrogated except upon the plainest statutory mandate; both parties are claiming an equity, the plaintiffs the equity of *bona fide* purchasers (*Sweatman v. Edwards,* 28 S. C., 58; 5 S. E., 165), and the defendant an equitable title; the mortgagee was derelict in not ascertaining the character of Lizzie Rogers' possession; she had good reason to think that it was not necessary to record her contract; the Act of 1925 was a legislative recognition of the fact that such a contract was not required to be recorded under the Section 5312, and that an amendment was necessary. A parol contract accompanied by possession would certainly not come within the Act of 1888 (Sec. 5313), and there would be presented the anomaly of a parol contract having greater efficacy than a written contract; the hardness of the case upon this old colored woman who is not nearly so much to blame as the mortgagee who trusted in the realty company without the slightest inquiry into the status of Lizzie Rogers' possession.

It seems to me that where, as in this case, both parties are relying upon the principles of equity, the equity of the case is overwhelmingly with the old darkey. It should at least be ascertained whether the plaintiffs have other security to which they may have recourse in relief of the defendant.